UNITED STATES of America, Plaintiff-Appellee,

v.

Michael Ira HARRIS, Defendant-Appellant.

No. 82–5550.

United States Court of Appeals, Eleventh Circuit.

Aug. 29, 1983.

Arthur Addess, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Jeffrey L. Russell, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Michael Harris was convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, possession with the intent to distribute, and knowing distribution of cocaine, both in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Harris appeals, challenging the warrantless entry of his residence by law enforcement officials and the sufficiency of the evidence as to the possession and distribution counts. Finding no reversible error, we affirm his convictions.

On January 6, 1982, Special Agent Cammarato of the Drug Enforcement Administration received a telephone call from Steven Beech, a "cooperating individual," who told Cammarato that he was negotiating a sale of between five and twenty kilograms of cocaine. Cammarato instructed Beech to continue the negotiations and to report back later in the evening. Cammarato then contacted other DEA agents and the Coral Springs, Florida police. Beech informed the officers later that five kilograms would be sold at Harris' residence that evening.

The agents and Beech met at a gas station from where Beech telephoned Harris and telephonically introduced Beech's "money man," DEA Special Agent Georges. Georges and Harris then finalized arrangements for a meeting at Harris' residence to complete the sale.

Upon their arrival at the residence, Beech and Georges were met at the door by Harris, who informed them that five kilograms of cocaine were in the house. The three then proceeded to appellant's bedroom where they met Carlos Costano-Velasquez, Jose Tang, Robin Nadeau, and Steve Burns. After a general conversation about cocaine, Costano-Velasquez told Burns and Harris to leave the room. The specifics of the deal were discussed, and Costano-Velasquez allowed Georges to inspect the cocaine. Georges then left, advising the conspirators that he was going to get the money. On his way out he asked Harris, who was seated at the dining room table, whether to leave the

front door open or closed. Harris told Georges to close the door, but to leave it unlocked, and to let himself back in when he returned with the money.

Once outside, Georges informed the other agents what he had seen, and plans were formulated for arresting the conspirators. The testimony was confused as to when exactly the agents announced their official capacity upon their re-entry. Apparently, Georges knocked on the door, announced he was back with the money, and entered the apartment. Close behind were uniformed Coral Springs police officers and other DEA agents all of whom loudly identified their presence as police officials. Georges went directly to the bedroom door and, upon finding it locked, kicked it open. The officers arrested the suspects and retrieved the contraband.

Appellant moved to suppress the evidence seized as a result of the warrantless entry of his house. After hearing testimony and arguments, the trial court denied the motion. Harris then waived his right to a jury trial and stipulated that the evidence adduced at the suppression hearing would constitute the evidence in the case-in-chief. The trial judge found Harris guilty of all three counts.

Appellant contends that the warrantless re-entry by Georges and the other agents violated his fourth amendment rights and that the trial judge erred in not suppressing the evidence seized. Harris also argues that 18 U.S.C. § 3109,[1] the "knock and announce" statute, was implicated. The Government responds that the continuing ruse exception, *see United States v. Dohm,* 597 F.2d 535, 538 (5th Cir.1979), *rev'd on other grounds,* 618 F.2d 1169 (5th Cir.1980) (en banc), excused the agents' failure to obtain a search warrant.

In *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the Supreme Court held that the entry of an undercover agent into a suspect's residence with his permission for the purpose of buying narcotics did not violate the fourth amendment. The Court noted that although one's home is accorded the full range of fourth amendment protection,

> when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*Id.* at 211, 87 S.Ct. at 427.

■ Harris initially argues that he was unable to consent to Georges' presence in the first instance because Harris' mother did not allow his friends to enter the house without her prior permission. This argument was rejected by the trial court when it held that Harris had "standing" to challenge the warrantless entry. We agree with the trial judge that Harris had the power to consent to Georges' presence in the house. *See United States v. Sonntag,* 684 F.2d 781, 786 n. 3 (11th Cir.1982). Under *Lewis,* therefore, Georges' initial entry was valid even though he failed to get a warrant. Appellant does not dispute this, but instead focuses on the second entry, when Georges was accompanied by other agents.

■ As he left the apartment, ostensibly to retrieve the money, Georges asked Harris whether the door should be left open or closed. Harris instructed the agent to close the door but not lock it, and to just come back in when he returned with the money. It is evident that Harris was consenting to Georges' re-entry. This consent, however, did not apply to Georges' companions, and

---

1. 18 U.S.C. § 3109:

    The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

may have evaporated with regard to Georges himself when Harris saw the agents coming up the walkway with guns drawn.

■ We do not believe that either the knock and announce statute or the fourth amendment were violated by the warrantless re-entry, because exigent circumstances were present to justify the failure to announce the agents' official capacity and to secure a search warrant.[2] The possibility that the cocaine would be destroyed was significant. During the final negotiations, Nadeau expressed some concern when Georges announced his intention to leave to get the purchase money. She asked him how long he expected to be gone and where he was going. Her concern alerted the agent that the conspirators might act to conceal or destroy the evidence should they suspect police involvement or if the delay while he was gone was too great. Although the bedroom did not have a private bath, there was a bathroom on the first floor of the townhouse that was easily accessible to the conspirators. The cocaine could have been destroyed before the agents re-entered the house.

The circumstances of this case are thus similar to those in *United States v. Tolliver*, 665 F.2d 1005 (11th Cir.), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982). In *Tolliver*, the undercover agent who posed as the "banker" also left to retrieve the purchase money and later re-entered with other agents to effect the arrests. The *Tolliver* court held that the danger that the evidence would be destroyed excused both the non-compliance with the statute and the failure to secure a warrant. Because the same concern was present here, we conclude that the trial court properly denied appellant's motion to suppress.

■ Appellant also challenges his conviction on the substantive offenses of possession and distribution on the ground that the evidence was insufficient to sustain his conviction. Viewing the evidence in the light most favorable to the Government, we must determine whether a reasonable trier of fact could find that the evidence established Harris' guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (Unit B en banc), *aff'd on other grounds*, —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

We have no difficulty in concluding that appellant's guilt was sufficiently established. In counts II and III he was charged with aiding and abetting pursuant to 18 U.S.C. § 2. The Government is not required to prove the defendant's participation in every phase of the offense, but must only show that the defendant willfully associated himself with the criminal enterprise and contributed to its success. *See United States v. Phillips*, 664 F.2d 971, 1010 (5th Cir.1981) (Unit B); *United States v. Hewitt*, 663 F.2d 1381 (11th Cir.1981). The evidence adduced at the suppression hearing that was incorporated into the bench trial established that Harris provided the facilities for the meeting and acted as the conduit for connecting a willing buyer with a willing seller.

■ Additionally, the court properly found Harris guilty for the underlying acts for which his coconspirators were convicted. *See Pinkerton v. United States*, 328 U.S. 640, 645–47, 66 S.Ct. 1180, 1183–1184, 90 L.Ed. 1489 (1946); *United States v. Decker*, 543 F.2d 1102 (5th Cir.1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977).

Having considered appellant's claims and having found no reversible error, we AFFIRM the decision of the district court.

---

2. Because exigent circumstances excuse compliance with the warrant requirement and the statute, we need not decide whether the continuing ruse exception enunciated in *Dohm* applies to these facts or whether Harris' independent consent to Georges' re-entry remained viable when Harris saw the agents coming toward the house with their guns drawn.