PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/15/96**TENTH CIRCUIT

COALITION OF ARIZONA/NEW
MEXICO COUNTIES FOR STABLE
ECONOMIC GROWTH,

     Plaintiff-Appellee,

v.

DEPARTMENT OF THE INTERIOR,
United States Fish and Wildlife Service;
BRUCE BABBITT, Secretary,
Department of Interior; MOLLY
BEATTIE, Director, United States Fish
and Wildlife Service; JOHN ROGERS,
Regional Director,

     Defendants-Appellees,

ROBIN SILVER,

     Applicant in Intervention-
     Appellant.

No. 95-2189

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-1058-MV)

Daniel B. Frank (Karen J. Budd-Falen with him on the brief), Budd-Falen Law Offices,
P.C., Cheyenne, WY, for Plaintiff-Appellee.

John J. Kelly, U.S. Attorney, Albuquerque, NM, for Defendants-Appellees (no
appearance at argument).

Laura M. Featherston, Student Attorney (James Jay Tutchton, Esq., with her on the brief), Earthlaw, University of Denver -- Foote Hall, Denver, CO, for Applicant in Intervention-Appellant.

Before HENRY, LIVELY,[*] and MURPHY, Circuit Judges.

HENRY, Circuit Judge.

Dr. Robin Silver appeals from the order of the United States District Court for the District of New Mexico denying his application to intervene in plaintiff-appellee Coalition of Arizona/New Mexico Counties for Stable Economic Growth's ("Coalition") suit against the Department of the Interior ("DOI"), the United States Fish and Wildlife Service ("FWS") and various government officials. The Coalition challenges FWS's decision to protect the Mexican Spotted Owl ("the Owl") under the Endangered Species Act ("the Act"), alleging that FWS failed to follow proper procedures and lacked data sufficient to list the Owl as threatened. Dr. Silver sought to intervene pursuant to the Rule 24 of the Federal Rule of Civil Procedure. Dr. Silver grounded his application upon two facts: (1) he had photographed and studied the Owl in the wild; and (2) he was instrumental in FWS's initial decision to protect the Owl under the Act, see, e.g., 58 Fed.

_____

[*] The Honorable Pierce Lively, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Reg. 14,248, 14,252 (1993) (citing Dr. Silver's petition as instigating FWS's decision to list the Owl as an endangered species).

An order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to an action. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 377 (1987); Arney v. Finney, 967 F.2d 418, 421 (10th Cir. 1992). Accordingly, we accept jurisdiction pursuant to 28 U.S.C. § 1291 and mindful that "the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," see, e.g., Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967), we reverse the decision of the district court and remand the case for further proceedings.

## I. BACKGROUND

Dr. Silver is a commercial wildlife photographer, an amateur biologist, and a naturalist, specializing in photographing creatures in the American Southwest. Dr. Silver has sought out and photographed the Owl in its natural habitat--old-growth forests in the Southwest. For the past five years, he has been active in the effort to protect the Owl and its habitat. In December 1989, Dr. Silver petitioned FWS to list the Owl as a threatened or endangered species. See 16 U.S.C. § 1533(b)(3)(A) (an "interested person" may petition FWS to add a species to the threatened and endangered species list). When FWS failed to act on his petition within the statutory time limit, see 16 U.S.C. § 1533(b)(3)(B),

3

Dr. Silver wrote a letter dated November 9, 1992, to the Secretary of the Interior threatening suit under the Act's citizen lawsuit provision, see 16 U.S.C. § 1540(g)(2)(C).

In April 1993, FWS listed the Owl as a threatened species. See 58 Fed. Reg. 14,248 (1993). However, FWS failed to designate critical habitat for the Owl, stating that "[d]esignation of critical habitat is prudent, but is not determinable at this time." Id.; see 16 U.S.C. § 1533(b)(6)(C). On November 11, 1993, Dr. Silver wrote the Secretary of Interior and the Director of FWS, threatening suit. In December 1993, Dr. Silver and other environmentalists filed suit in the United States District Court for the District of Arizona to force the designation of critical habitat for the Owl. See Aplt's Br. Attach. 3 (the Arizona District Court's unpublished Order in Silver v. Babbitt, No. CIV 94-337 PHX CAM (D. Ariz. 1994)). In October 1994, the court ordered FWS to designate critical habitat for the Owl, but FWS continued to delay. Dr. Silver moved to have FWS held in contempt of court, and the court ordered FWS to submit daily progress reports to Dr. Silver to insure that FWS would comply with the court's order. FWS designated critical habitat for the Owl on May 30, 1995. See 60 Fed. Reg. 29,914 (1995).

In September 1994, the Coalition filed the present lawsuit in the United States District Court for the District of New Mexico challenging the listing of the Owl as an endangered and threatened species under the Act. The Coalition alleges that FWS failed to follow proper procedures and lacked data sufficient to list the Owl as threatened. In May 1995, Dr. Silver filed an application to intervene as of right, or in the alternative,

permissively, pursuant to Fed. R. Civ. P. 24. Both the Coalition and the DOI opposed his application, and in July 1995 the district court denied it. The district court did, however, permit Dr. Silver to submit a brief as amicus curiae.

On appeal, Dr. Silver argues that it was error for the court to deny his petition to intervene as of right for the following reasons: he filed his petition in a timely fashion; he has a direct, substantial and legally protectable interest in the subject matter of the action; his interest might be impaired absent his intervention; and The DOI will not adequately represent his interest. See Fed. R. Civ. P. 24(a)(2); Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 90 (10th Cir. 1993). Alternatively, Dr. Silver contends that the district court erred by not allowing him to intervene permissively. The Coalition[1] argues[2] that the district court's denial of Dr. Silver's application to intervene was proper because: his interest in the subject matter of the action is not direct, substantial and legally enforceable; his interest is not impaired; and the DOI will adequately represent his interest.

## II. DISCUSSION

Fed. R. Civ. P. 24(a)(2) provides, in relevant part, as follows:

---

[1] The DOI did not submit a brief on appeal and therefore waived its opportunity to argue against Dr. Silver's intervention at oral argument. See Fed. R. App. P. 31(c).

[2] The Coalition's counsel failed to appear at oral argument. After contacting the Coalition's counsel by telephone, we heard argument from Dr. Silver's counsel and allowed the Coalition to stand on its briefs. See Fed. R. App. P. 34(e).

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Accordingly, an applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties." Id. We review for an abuse of discretion a district court's rulings on the timeliness of an application for intervention as of right, but we review de novo a district court's rulings on the three remaining requirements under Rule 24(a)(2). See Alameda Water & Sanitation Dist., 9 F.3d at 89-90. The parties agree that Dr. Silver's application was timely. See Aplt's Br. at 10; Aple's Br. at 6. We now address de novo whether Dr. Silver's application met the remaining three requirements under Rule 24(a)(2).[3]

---

[3] Dr. Silver's argument that the Coalition has conceded all but the last issue--adequate representation--is unfounded. Dr. Silver's support for this concession comes from the Coalition's Opposition to Dr. Silver's Application to Intervene filed in the district court, see Aplt's App. at 91, which Dr. Silver characterizes as "noting all four requirements for intervention as of right, but challenging only adequacy of representation." See Aplt's Br. at 10 n. 10. This is an accurate characterization as far as it goes, see Aplt's App. at 92-3; however, we do not believe the Coalition has conceded the second and third requirements merely by focusing upon the fourth.

## A. Dr. Silver has a direct, substantial and legally protectable interest in the listing of the Owl.

Dr. Silver must first show that he has "an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2). The contours of the interest requirement have not been clearly defined. See 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1908 at 263 (2d ed. 1986 & Supp. 1996). Dr. Silver cites Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392 (9th Cir. 1995), for the proposition that he "is entitled as a matter of right to intervene in an action challenging the legality of a measure [he] has supported." Id. at 1397; see also Yniguez v. Arizona, 939 F.2d 727 (9th Cir. 1991); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527-28 (9th Cir. 1983); Washington State Bldg. & Constr. Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir. 1982), cert. denied, 461 U.S. 913 (1983).

Our circuit and the Fifth Circuit require that "[the] interest in the proceedings be 'direct, substantial, and legally protectable.'" Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.), 998 F.2d 783, 791 (10th Cir. 1993) (quoting United States v. Perry County Bd. of Educ., 567 F.2d 277, 279 (5th Cir. 1978)). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination," Security Ins. Co. v. Schipporeit, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995), and "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," Nuesse, 385 F.2d at 700; accord Sierra Club v. Espy, 18 F.3d 1202, 1207

7

(5th Cir. 1994); Ceres Gulf v. Cooper, 957 F.2d 1199, 1203 n. 10 (5th Cir. 1992); Sanguine, Ltd. v. Department of the Interior, 736 F.2d 1416, 1420 (10th Cir. 1984); see also National Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 384 (10th Cir. 1977) ("Our court has tended to follow a somewhat liberal line in allowing intervention."); Sanguine, Ltd., 736 F.2d at 1420 ("[W]e determine whether an applicant's interest is sufficient by applying the policies underlying the "interest" requirement to the particular facts of the case."). We now address the question of whether Dr. Silver's interest in the Owl, as a photographer, an amateur biologist, and a naturalist who has been at the forefront of efforts to protect the Owl under the Act, is "direct, substantial, and legally protectable" for the purposes of intervention under Rule 24(a)(2).

Dr. Silver initiated the process to protect the Owl by submitting a petition for its protection, see 58 Fed. Reg. 14,248, 14,252 (1993) (referring to the date FWS received Dr. Silver's petition as the initial event of the listing process). He pressed DOI and FWS in two letters to take action on his petition, see Aplt's Br., Attach. 1, 2, and sued FWS when it failed to designate critical habitat for the Owl, see id., Attach. 3 (Order of the United States District Court for the District of Arizona mandating that FWS publish a proposed designation of critical habitat for the Owl). When FWS failed to comply with the court order to designate a critical habitat for the Owl, Dr. Silver twice moved for an order of contempt, see id., Attach. 4, 5, resulting in a court order that FWS maintain a

8

daily diary and inform Dr. Silver of its progress toward the designation of critical habitat, see id., Attach. 8.

We are not faced, as the Coalition suggests, with an applicant who has no interest in the present litigation other than prior litigation involving the same subject matter. Instead, Dr. Silver has been directly involved with the Owl as a wildlife photographer, an amateur biologist, and a naturalist who has photographed and studied the Owl in its natural environment. Dr. Silver's counsel admitted at oral argument that Dr. Silver had little economic interest in the Owl; however, economic interest is not the sine qua non of the interest analysis for intervention as of right. To limit intervention to situations where the applicant can show an economic interest would impermissibly narrow the broad right of intervention enacted by Congress and recognized by the courts. See Nuesse, 385 F.2d at 700; Sierra Club v. Espy, 18 F.3d at 1207; Ceres Gulf, 957 F.2d at 1203 n. 10; Sanguine, Ltd., 736 F.2d at 1420. In sum, we hold that Dr. Silver's involvement with the Owl in the wild and his persistent record of advocacy for its protection amounts to a direct and substantial interest in the listing of the Owl for the purpose of intervention as of right, even though Dr. Silver has little economic interest in the Owl itself.

Additionally, Dr. Silver's interest in the Owl is legally protectable as evidenced by his successful effort to have the Owl protected as an endangered species under the Act. Section 1533(b)(3) of the Act requires the Secretary of the Interior to respond within twelve months to a petition submitted by an "interested person" requesting that the

9

Secretary list a species as threatened or endangered, and if listing is warranted, to publish a proposed regulation for comment. 16 U.S.C. § 1533(b)(3). Dr. Silver first threatened suit and later exercised his right under section 1540(g)(1)(C) to commence a civil suit against the DOI for failure to preform its non-discretionary duty under section 1533(b)(3). Thus, the Act provided Dr. Silver with the legal right to protect his interest in the Owl. Additionally, section 1540(g)(1)(A) of the Act gives a private citizen the right to "commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . , who is alleged to be in violation of [the Act]." 16 U.S.C. § 1540(g)(1)(A). Language from the Supreme Court in Lujan v. Defenders of Wildlife further bolsters our conclusion that Dr. Silver's interest is legally protectable: "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." 504 U.S. 555, 562-63 (1992) (citing Sierra Club v. Morton, 405 U.S. 727, 734 (1972)); see Yniguez, 939 F.2d at 735 (reasoning that "because the Article III standing requirements are more stringent than those for intervention under rule 24(a), [the] determination that [the applicants] have standing under Article III compels the conclusion that they have an adequate interest under the rule").

Because Dr. Silver's interest in the litigation between the Coalition and the DOI is direct, substantial, and legally protectable, it sufficiently "relates to the property or transaction which is the subject of the action" and thereby satisfies the first element under

10

Rule 24(a)(2).  Cf. Hazardous Waste Treatment Council v. South Carolina (In re Sierra Club), 945 F.2d 776, 779 (4th Cir. 1991) (holding that an environmental organization that was party to an administrative permitting proceeding was entitled to intervene as a matter of right in an action challenging the constitutionality of a governing state regulation); Sagebrush Rebellion, Inc., 713 F.2d at 527-28 (holding that wildlife organizations were entitled to intervene as a matter of right in an action procedurally challenging the DOI's decision to establish a conservation area);  Washington State Bldg. & Constr. Trades Council, 684 F.2d at 630 (holding that "the public interest group that sponsored the [statute as a ballot] initiative . . . was entitled to intervention as a matter of right under Rule 24(a)" in an action challenging the constitutionality of the statute); Yniguez, 939 F.2d at 735 (same); Planned Parenthood v. Citizens for Community Action, 558 F.2d 861, 869 (8th Cir. 1977) (holding that a neighborhood association, whose "professed purpose . . . is to preserve property values and insure that abortion facilities do not affect the health, welfare and safety of citizens," was entitled to intervene in an action challenging the constitutionality of a local ordinance imposing a moratorium on the construction of abortion clinics); New York Public Interest Research Group v. Regents of the Univ., 516 F.2d 350, 351-52 (2d Cir. 1975) (holding that a pharmacists' organization and individual pharmacists had a right to intervene in an action brought by consumers to challenge a state regulation prohibiting the advertising of the price of prescription drugs).[4]

---

[4]     We note that a motion to intervene in the litigation between Dr. Silver and FWS taking place in Arizona was filed by the State of Arizona, Apache County, and White Sands

11

We recently discussed the interest requirement of Rule 24(a)(2) in City of Stilwell v. Ozarks Rural Elec. Coop., 79 F.3d 1038, 1042 (10th Cir. 1996). In Ozarks, KAMO Electric Cooperative sought to intervene in a condemnation proceeding brought by the City of Stilwell, Oklahoma, against Ozarks Rural Electric Cooperative. If Stilwell had prevailed, Ozarks would have lost the right to sell power to certain customers. KAMO's interest in the condemnation proceeding was "contingent;" that is, "KAMO, as Ozarks' supplier of electric power, [would have] benefit[ed] financially if Ozarks [was] allowed to continue to service its customers in Stilwell." Id. at 1042. We held that such a contingent interest is not sufficiently "direct and substantial" to satisfy the interest requirement of Rule 24(a)(2). Id.

The decision in Ozarks echoes that of an earlier Tenth Circuit case, Allard v. Frizzel, 536 F.2d 1332 (10th Cir. 1976) (per curiam). In Allard, we held that two public interest groups had an insufficient interest to intervene in a case in which several owners of native American artifacts made of eagle feathers challenged the Migratory Bird Act and the Eagle Protection Act. Id. at 1333. The subject of the suit was whether these

---

Forest Products, Inc. and was denied. See Silver v. Babbitt, 68 F.3d 481, 1995 WL 597667 (9th Cir. Oct. 10, 1995). Although the memorandum opinion does not supply us with all the relevant facts and the information is not in the record now before us, the memorandum opinion makes it clear that the only threat to the intervenors' interest in that litigation was Dr. Silver's request for a ninety day injunction. Id. at *2. The Ninth Circuit noted that the "applicant intervenor's legal rights may be adequately protected in a future lawsuit to compensate for damages sustained as a result of [the] court's injunction." Id. Although we make no substantive comment on this holding, it is clear that Dr. Silver's legal rights are in greater jeopardy here where the Coalition seeks a permanent injunction against FWS prohibiting any future action in favor of the Owl.

12

federal laws infringed upon the plaintiffs' rights to the feathered artifacts. Id. The public interest groups sought to intervene to protect living birds and the environment. We held that the public interest groups were not entitled to intervene as of right because their interest in living birds and the environment was not sufficiently related to the plaintiffs' right to the already existing artifacts. Id.

The nature of the litigation between the Coalition and the DOI is different from that in Ozarks Rural Electric Coop. and Allard. Both of those cases involved what has been called traditional intervention. See United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) ("'[R]ule [24(a)(2)] was designed with . . . traditional private action[s] in mind, and its adaptation to other contexts requires a flexible reading of its provisions.'") (quoting Note, Intervention in Government Enforcement Actions, 89 Harv. L. Rev. 1174, 1177 (1976) and citing Nuesse v. Camp, 385 F.2d at 700). Ozarks involved a condemnation dispute, and Allard involved private property interests in native American artifacts. The present litigation involves a challenge to FWS's decision to list the Owl, an administrative action not analogous to the litigation in Ozarks and Allard. Thus, the analysis of the interest requirement here is not analogous to the analyses of the interest requirements in those cases.

In Alameda Water & Sanitation District, we addressed the interest requirement in the context of an administrative action. We held that a public interest group lacked sufficient interest in the litigation because the interest group wanted to "offer extraneous

13

evidence beyond the administrative record, and thus beyond the scope of the narrow issue before the district court." 9 F.3d at 91. Here, by contrast, Dr. Silver does not propose to go outside the administrative record, but desires to advocate the Owl's protection from his perspective as the Owl's most ardent supporter. Thus, the holding in Alameda Water & Sanitation District is not directly applicable to Dr. Silver's situation.

However, Alameda Water & Sanitation District lends support to Dr. Silver's argument that his advocacy for the Owl establishes his interest in the litigation for the purpose of Rule 24(a)(2). In a footnote in Alameda Water & Sanitation District, we distinguished Regents of the University, 516 F.2d 350, from the facts in Alameda Water & Sanitation District. In Regents of the University, the Second Circuit held that the Pharmaceutical Society of the State of New York had sufficient interest in a regulation prohibiting the advertising of prices for prescription drugs to intervene in litigation challenging the regulation. The court held the pharmacists had adequate interest in the regulation to intervene as of right because the regulation affected their economic interests, their interest in maintaining their profession, and their interest in supporting small independent drug stores from unfair competition. Because the pharmacists in Regents of the University did not propose to argue outside the record but "would more vigorously advance an economic argument in favor of the statute than would the [Regents]," and "the Regents had 'acknowledge[d] that protecting the economic interests of certain pharmacists [was] one basis for sustaining the regulation,'" we distinguished their

14

situation from that of the applicants in Alameda Water & Sanitation District. See Alameda Water & Sanitation Dist., 9 F.3d at 91 n. 3 (quoting Regents of the Univ., 516 F.2d at 352). Similarly, as a photographer, naturalist and amateur biologist who has studied and photographed the Owl in the wild, and as the Owl's primary advocate during its listing process, Dr. Silver will "more vigorously advance" the reasons for the Owl's protection. See 58 Fed. Reg. 14,248 (1993) (giving the following bases for the Owl's protection: destruction of the Owl's habitat, increased predation and lack of adequate protective regulations).

The Coalition argues that the only interest Dr. Silver has in the litigation is his desire to transfer jurisdiction to the United States District Court for the District of Arizona, which has handled the litigation surrounding Dr. Silver's petition to have the Owl protected under the Act. This argument is without merit. If a party has the right to intervene under Rule 24(a)(2), the intervenor becomes no less a party than others and has the right to file legitimate motions, including venue motions. It then becomes the charge of the district court to sort through the motions including, in this case, a possible motion to transfer. Further, the right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2).

The Coalition's contention that Dr. Silver is forum shopping and that we should not allow him to succeed in this most disfavored practice also rings hollow. If anyone has forum shopped in this action it would appear to be the Coalition. Instead of bringing the

15

present action in New Mexico, the Coalition could have applied to intervene in the action already pending in Arizona. The purpose of Rule 24(a), the prevention of "a multiplicity of suits where common questions of law or fact are involved," see Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) (citing Reich v. Webb, 336 F.2d 153, 160 (9th Cir. 1964), cert. denied, 380 U.S. 915 (1965)), suggests that all sides of the Owl litigation should be in one action, whether it be in New Mexico or Arizona. Otherwise, an endless string of litigation in two courts may ensue, with each court effectively reviewing the other's decision to list or delist the Owl, and neither court's rulings having preclusive effect on the absent party.

### B. Dr. Silver's Interest May Be Impaired

To satisfy the second element under Rule 24(a)(2), Dr. Silver must show that the disposition of the Coalition's suit against the DOI "may as a practical matter impair or impede his ability to protect [his] interest." Fed. R. Civ. P. 24(a)(2). Such impairment or impediment need not be "of a strictly legal nature." Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir. 1978). "[We] may consider any significant legal effect in the applicant's interest and [we are] not restricted to a rigid res judicata test." Id. Thus, the stare decisis effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2). See Sierra Club v. Espy, 18 F.3d at 1207.

16

In its complaint against the DOI, the Coalition contends that the DOI "failed to use the best available data," misapplied the data, used unfounded assumptions and jeopardized the Southwestern forest ecosystem. Aplt's App. at 15-22 (Coalition's "Complaint for Declaratory and Injunctive Relief"). As part of its remedy, the Coalition seeks "[a] permanent injunction enjoining [the DOI] from taking any actions pursuant to the listing of the [Owl]." Id. at 25. If the district court were to rule in favor of these contentions and to mandate that the DOI delist the Owl, Dr. Silver's interest in the protection of the Owl would be impaired. Dr. Silver could submit a new petition to FWS to protect the Owl; however, he would, "as a practical matter," be impaired by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction. Furthermore, the Owl and its habitat would not be protected under the Act while Dr. Silver tried to lift such a permanent injunction and FWS considered Dr. Silver's new petition.

C.  The Existing Parties Do Not Adequately Represent Dr. Silver's Interest

The burden is on the applicant in intervention to show that the representation by the existing parties may be inadequate, but this burden is "minimal." National Farm Lines, 564 F.2d at 383 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972)). "An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the

17

applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest." Sanguine, Ltd., 736 F.2d at 1419. "[T]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants . . . ." Natural Resources Defense Council, 578 F.2d at 1346. However, "representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.'" Ozarks Rural Elec. Coop., 79 F.3d at 1042 (quoting Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986)); see also Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996) ("Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.'") (quoting Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality, 775 F. Supp. 353, 359 (D. Ore. 1991) (citing American Nat'l Bank and Trust Co. v. City of Chicago, 865 F.2d 144, 148 n. 3 (7th Cir. 1989))). Dr. Silver argues that his interest and that of DOI are divergent and that DOI's failure to move to transfer venue to the district court in Arizona, where litigation over the protection of the Owl under the Act is pending, see Aplt's Br. Attach. 3 (unpublished Order in Silver v. Babbitt, No. CIV 94-337 PHX CAM (D. Ariz. 1994)), evidences DOI's failure to protect his interest.

Our decision in National Farm Lines, 564 F.2d 381, is on point. There, several groups that represented motor carriers and that were registered with the Interstate Commerce Commission ("ICC") sought to intervene in a suit brought against ICC challenging the constitutionality of federal laws and regulations which protected the

registered motor carriers against competition from unregistered motor carriers. The plaintiff, who was an unregistered motor carrier, argued that the applicants' interests were adequately represented by ICC, which promulgated the regulations. We disagreed and reversed the lower court's denial of the applicants' motion to intervene as of right, reasoning as follows:

> "We have here . . . the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible. The cases correctly hold that this kind of a conflict satisfies the minimal burden of showing inadequacy of representation."

Id. at 384.

Like ICC in National Farm Lines, DOI must represent the public interest, which may differ from Dr. Silver's particular interest in the protection of the Owl in the habitat where he has photographed and studied the Owl. Cf. Trbovich, 404 U.S. at 538-39 (holding that a union member's interest was not adequately represented by the Secretary of Labor because the Secretary had a "duty to serve two distinct interests, which are related, but not identical:" that of the individual union member and that of the general public); Sierra Club v. Espy, 18 F.3d at 1207-08 (holding that timber industry representatives were not adequately represented by the government because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry"), accord Sierra Club v. Glickman, 82 F.3d at 110; Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 1000-01 (8th Cir. 1993) (holding that

19

counties and landowners could intervene as of right because their local and individual interests were not adequately represented by the State of Minnesota); In re Sierra Club, 945 F.2d at 779-80 (holding that an environmental group could intervene as of right because in defending its regulation, the state administrative agency must represent the interests of all the citizens of the state, not just the proponents of the regulation, whom the environmental group represented exclusively). DOI's ability to adequately represent Dr. Silver despite its obligation to represent the public interest is made all the more suspect by its reluctance in protecting the Owl, doing so only after Dr. Silver threatened, and eventually brought, a law suit to force compliance with the Act. Cf. Idaho Farm Bureau Fed'n, 58 F.3d at 1398 (holding that FWS would not adequately represent the interests of environmental groups in an action challenging the species' protection because FWS had listed the species only after being sued by the environmental groups, who had originally petitioned for the protection of a species under the Act); County of Fresno v. Andrus, 622 F.2d 436, 438-439 (9th Cir. 1980) ("[T]here is further reason to doubt that [DOI] will fully protect [the applicant's] interest . . . in light of the fact that the [DOI] began its rulemaking only reluctantly after [the applicant] brought a law suit against it."). Under these circumstances, we conclude that Dr. Silver has made the minimal showing necessary to suggest that the government's representation may be inadequate.

## IV. CONCLUSION

We hold that Dr. Silver has a right to intervene in the action pursuant to Fed. R. Civ. P. 24(a)(2) because:  Dr. Silver has a direct, substantial and legally protectable interest in the subject of the action between the Coalition and DOI; this interest may be impaired by the determination of the action; and neither DOI nor the Coalition will adequately represent Dr. Silver's interest.  Because Dr. Silver may intervene as of right under Rule 24(a)(2), it is unnecessary to consider the question of intervention as a matter of discretion under Rule 24(b)(2).  We therefore reverse the order denying Dr. Silver's motion to intervene under Rule 24(a)(2) and remand the case to the District Court for the District of New Mexico with the direction that Dr. Silver's application to intervene be granted.