**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

---

UTAH ASSOCIATION OF COUNTIES, on behalf of its members; MOUNTAIN STATES LEGAL FOUNDATION,

    Plaintiffs-Appellees,

v.

WILLIAM JEFFERSON CLINTON, in his official capacity as President of the United States; UNITED STATES OF AMERICA; KATHLEEN A MCGINTY, in her official capacity as Chair of the Council on Environmental Quality; THE COUNCIL ON ENVIRONMENTAL QUALITY; BRUCE BABBITT, in his official capacity as Secretary of the Interior; DEPARTMENT OF INTERIOR; BUREAU OF LAND MANAGEMENT; SYLVIA BACA, in her official capacity as Interim Director of the Bureau of Land Management,

    Defendants,

_____

SOUTHERN UTAH WILDERNESS ALLIANCE; THE WILDERNESS SOCIETY; THE GRAND CANYON TRUST; ESCALANTE CANYON OUTFITTERS, INC.; BOULDER MOUNTAIN LODGE; ESCALANTE'S GRAND STAIRCASE B&B INN, INC.,

    Movants-Appellants.

No. 00-4143

Appeal from the United States District Court
for the District of Utah
(D.C. No. 97-CV-479)

Brian B. O'Neill of Faegre & Benson LLP, Minneapolis, Minnesota (Richard A. Duncan and William L. Underwood of Faegre & Benson LLP, Minneapolis, Minnesota; Heidi J. McIntosh and Stephen H.M. Bloch of Southern Utah Wilderness Alliance, Salt Lake City, Utah, with him on the briefs), for Movants-Appellants.

Susan Amanda Koehler of Mountain States Legal Foundation, Denver, Colorado; and Michael B. Marinovich of C.E. Brooks & Associates, P.C., Denver, Colorado (William Perry Pendley and David Andrew Wight of Mountain States Legal Foundation, Denver, Colorado; and Constance E. Brooks of C.E. Brooks & Associates, P.C., with them on the brief) for Plaintiffs-Appellees.

Before **SEYMOUR**, **McKAY** and **BRORBY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

The Southern Utah Wilderness Alliance, The Wilderness Society, The Grand Canyon Trust, Escalante Canyon Outfitters, Inc., Escalante's Grand Staircase B&B/Inn, and Boulder Mountain Lodge sought leave to intervene in this action by the Utah Association of Counties to enjoin and have declared illegal the Presidential Proclamation establishing the Grand Staircase Escalante National Monument. The district court denied the motion to intervene. We reverse.

-2-

# I

## Background

On September 18, 1996, President Clinton issued Presidential Proclamation Number 6920 establishing the Grand Staircase-Escalante National Monument and reserving approximately 1.7 million acres of federal land in southern Utah from public entry under the public land laws. The Proclamation describes the land at issue as follows:

> The Grand Staircase-Escalante National Monument's vast and austere landscape embraces a spectacular array of scientific and historic resources. This high, rugged, and remote region, where bold plateaus and multi-hued cliffs run for distances that defy human perspective, was the last place in the continental United States to be mapped. Even today, this unspoiled natural area remains a frontier, a quality that greatly enhances the monument's value for scientific study. The monument has a long and dignified human history: it is a place where one can see how nature shapes human endeavors in the American West, where distance and aridity have been pitted against our dreams and courage. The monument presents exemplary opportunities for geologists, paleontologists, archeologists, historians, and biologists.

Proclamation No. 6920, 61 Fed. Reg. 50223 (Sept. 18, 1996).

On June 23, 1997, the Utah Association of Counties filed a complaint for injunctive and declaratory relief against the President and various federal officials, alleging that the creation of the monument was an illegal attempt by the Secretary of the Interior to prevent a proposed underground coal mine at Smokey Hollow, owned by Andalex Resources Corporation and located within the

-3-

monument. The complaint sought to have the Presidential Proclamation set aside on the grounds that it violated the separation of powers doctrine, exceeded powers vested in the president by the Antiquities Act of 1906, 16 U.S.C. § 431, and failed to comply with the National Environmental Policy Act, 42 U.S.C. § 4332 (NEPA), the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.* (FLPMA), and the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (APA). On December 15, 1997, the Mountain States Legal Foundation filed its first amended complaint, seeking the same relief against the same defendants and asserting virtually the same alleged illegalities. The two cases were consolidated later that month.

On March 21, 2000, the intervenors sought leave "to represent the interests of public interest organizations and individuals whose goals include protecting the nation's public lands and assuring their continued integrity in perpetuity." Aplt. App. at 85. The district court held a hearing on the motion and denied it, stating that

> [t]his case is not about the environment, it is not about the intervenors' property rights or interests in the monument in question. It is not about that. It is about the legality of the president's action in creating the monument. The allegations are that he violated several statutes[,] primarily the Antiquities Act[,] by the way this monument was created. This issue is adequately represented by the government.

*Id.* at 153.

The intervenors appeal,[1] arguing the district court erred in its application of the standards governing intervention as of right under Fed. R. Civ. P. 24(a)(2) and under a proper assessment of the relevant factors they are entitled to intervene as a matter of right. Alternatively, the intervenors contend the district court abused its discretion in failing to grant permissive intervention under Rule 24(b). Plaintiffs respond that the application for intervention failed to meet any of the requirements for intervention as of right, asserting (1) the application was not timely and plaintiffs would therefore be prejudiced by allowing intervention, (2) the intervenors' interests do not meet the requirements for intervention, (3) the intervenors have not shown those interests would be subject to impairment, and (4) their interests would be adequately represented by the government in any event.

Intervention is authorized by Rule 24, which provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[1] "An order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to an action." *Coalition of Arizona/New Mexico Counties v. Dep't of the Interior*, 100 F.3d 837, 839 (10th Cir. 1996).

Fed. R. Civ. P. 24(a).

> Accordingly, an applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."

*Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (quoting Fed. R. Civ. P. 24(a)(2)). This circuit follows "a somewhat liberal line in allowing intervention." *Id*. at 841 (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977)). We generally review a district court's ruling on the timeliness of a motion to intervene under an abuse of discretion standard. *Id.* at 840. When the court makes no findings regarding timeliness, however, we review this factor de novo. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 n.5 (6th Cir. 2000); *Sierra Club v. Espy*, 18 F.3d 1202, 1205 n.2 (5th Cir. 1994). We review de novo the court's rulings on the three remaining requirements of Rule 24(a)(2). *See Coalition*, 100 F.3d at 840.

## II

### Timeliness

We turn first to the issue of timeliness. As mentioned above, the complaints in this case were filed in 1997 and the motion for leave to intervene

was not filed until 2000.  Plaintiffs contend the application did not meet the timeliness requirement of Rule 24(a)(2).

At the beginning of the hearing on the application to intervene, the district court stated:

> . . . you are late.  You're two and a half years late.  This case has been kind of slow going anyway with the briefing and discovery, and I am sure it is for valid reasons, but it has been a fairly slow process anyway.  It is kind of late to be adding parties.

Aplts. App. at 131.  In response, counsel for the intervenors contended plaintiffs had not identified any prejudice arising from the length of time between the filing of the complaints and the motion to intervene; promised the intervenors would agree to be bound by whatever discovery schedule was already in place, would not seek additional discovery, and would not file a counterclaim or raise defenses not raised by the government; and pointed out that while some discovery had occurred, not a lot had happened in the case.  When counsel for the Utah Association of Counties subsequently proposed to address the timeliness issue, the district court directed him to move on to another matter.  Shortly thereafter, in ruling from the bench, the court did not mention the timeliness factor, basing its denial instead on other grounds.  The court's written order denying intervention likewise does not refer to the matter of timeliness.  While the court initially observed that the application was "late," we conclude the court simply made no findings regarding timeliness.  We therefore review this question de novo.  *See*

-7-

*Stupak-Thrall*, 226 F.3d at 472 n.5 (when district court makes no findings on timeliness, court of appeals does not remand but applies de novo level of review).

The timeliness of a motion to intervene is assessed "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (citations omitted). "The analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d at 1205; *see also Stupak-Thrall*, 226 F.3d at 475 (absolute measure of time between filing of the complaint and the motion to intervene is one of least important circumstances). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d at 1205 (citation omitted); *see also* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1916, at 425-26 (2d ed. 1986) ("The requirement of timeliness is not a means of punishment for the dilatory and the mere lapse of time by itself does not make an application untimely." (footnote omitted)).

On appeal, plaintiffs maintain that allowing intervention under the circumstances would prejudice them because the case is ready for disposition. The record indicates, to the contrary, that the case is far from ready for final disposition; no scheduling order has been issued, no trial date set, and no cut-off date for motions set. According to the district court docket, all that had occurred prior to the motion to intervene were document discovery, discovery disputes, and motions by defendants seeking dismissal on jurisdictional grounds.[2]

Plaintiffs also assert that they would be prejudiced by allowing intervention because adding additional parties would double the work load and add issues. These factors, however, are a function of intervention itself rather than the timing of the motion to intervene. The prejudice prong of the timeliness inquiry "measures prejudice caused by the intervenors' delay–not by the intervention itself." *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998).

In view of the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene,[3] we conclude the request for

---

[2] The intervenors assert on appeal that they waited to file their motion to intervene until resolution of the government's dispositive motion in order to ascertain whether there would ultimately be a case in which to intervene. "Courts should discourage premature intervention that wastes judicial resources." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). In our view, this circumstance is an additional factor indicating the motion to intervene was not untimely.

[3] We note the government has taken no position on the motion to intervene.

intervention is timely.

## III

## The Intervenors' Interest

Under Rule 24(a)(2), the intervenors must "claim[] an interest relating to the property or transaction which is the subject of the action." The property that is the subject of plaintiffs' lawsuit is the monument itself. The intervenors claim they have an interest in the continued existence of the monument and its reservation from public entry, both on the basis of their financial stake in the tourism the monument has created and on the basis of their desire to further their environmental and conservationist goals by preserving the undeveloped nature of the lands encompassed by the monument. They point out that they were "vocal and outspoken champions and advocates" for the creation of the monument, they have regularly commented on and participated in the government's monument land management plan, and they regularly visit the monument for aesthetic, scientific and recreational purposes. Br. of Aplts. at 19-20.

We recently addressed the nature of the interest an applicant for intervention must demonstrate in *Coalition of Arizona/New Mexico Counties*, 100 F.3d at 840-44. In that case, a commercial wildlife photographer, Dr. Robin Silver, who had a particular interest in the Mexican Spotted Owl, sought to

-10-

intervene in a suit brought against the United States Fish and Wildlife Service challenging the Service's decision to protect the Owl under the Endangered Species Act. Dr. Silver had studied and photographed the Owl in the wild and had been instrumental in the Service's initial decision to protect the Owl under the Act.

In addressing whether Dr. Silver had the requisite interest to intervene as of right, we observed that while "[t]he contours of the interest requirement have not been clearly defined," in this circuit the interest must be "direct, substantial, and legally protectable." *Id.* at 840 (quoting *In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir. 1993)). We further pointed out that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 841 (citations omitted). We concluded that "Dr. Silver's involvement with the Owl in the wild and his persistent record of advocacy for its protection amounts to a direct and substantial interest . . . for the purpose of intervention as of right." *Id.* In reaching this conclusion, we drew support from the Supreme Court's statement that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

-11-

562-63 (1992).[4]  We cited numerous cases in which environmental organizations and other special interest groups have been held to have a sufficient interest for purposes of intervention as of right in cases in which their particular interests were threatened.  *See Coalition*, 100 F.3d at 842-43 (citing cases).  We also held that Dr. Silver's interest was legally protectable as evidenced by his efforts to ensure the Owl's protection under the Endangered Species Act.  *Id.* at 841.

In our judgment, the circumstances in *Coalition* are sufficiently analogous to those here to indicate persuasively that the intervenors have the requisite interest.  In addition to *Coalition* and the authority upon which it relies, we find persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals.  *See, e.g., Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996) (conservation groups seeking to preserve wilderness nature of national park had requisite interest in lawsuit seeking to undo snowmobiling restrictions); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527-28 (9th Cir. 1983) (National Audubon Society had sufficient interest in lawsuit challenging withdrawal of federal land to create bird conservation area).

---

[4] As we pointed out in *Coalition*, because Article III standing requirements are more stringent than those for intervention under Rule 24(a), a determination that intervenors have Article III standing compels the conclusion that they have the requisite interest under the rule.  *Coalition*, 100 F.3d at 842 (citing *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991)).

In ruling to the contrary, the district court stated that "[t]his case is not about the environment, it is not about the intervenors' property rights or interests in the monument in question. . . . It is about the legality of the president's action in creating the monument." Aplt. App. at 153. Plaintiffs rely on the district court's statements in maintaining the intervenors do not meet either the interest or impairment prong of the Rule 24(a)(2) inquiry. Both the district court and plaintiffs have simply misperceived the interest inquiry mandated by the rule. The interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is *related to the property that is the subject of the action. See Sagebrush Rebellion*, 713 F.2d at 528. Plaintiffs challenge the creation of the monument itself; it is thus beyond dispute that the subject of the action is the monument. The intervenors claim an interest relating to the monument and its continued existence by virtue of their support of its creation, their goal of vindicating their conservationist vision through its preservation, their use of the monument in pursuit of that vision, and their economic stake in its continued existence. Under the authority discussed above, we conclude the intervenors' interest is sufficiently related to the subject of the action to support intervention as of right.

# IV

## Impairment of Interest

Rule 24(a)(2) also requires the intervenors to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest. This court has pointed out that "the question of impairment is not separate from the question of existence of an interest." *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). Moreover, "the Rule refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature." *Id.* "'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'" *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)).

The intervenors argue on appeal that their interest in the preservation and protection of the monument would be significantly impaired by an adverse decision setting aside the creation of the monument. They point out that under the land use plan in effect before the monument was established, much of the land it now encompasses was open to unrestricted off-road travel, and that as a result the land itself was being degraded and its wilderness character was deteriorating.

-14-

The monument management plan, in which the intervenors have had input, significantly restricts off-road travel and reserves the land from public entry. In the intervenors' view the management plan has enhanced the land with respect to their scientific, recreational, and aesthetic interests in the monument. The intervenors contend these environmental and conservationist interests would be impaired were the monument to lose its protected status and previous land use plans to be reinstated. The intervenors also state that many of them operate businesses that have benefitted from the tourism the monument has generated, and that these economic interests would be impaired should the monument to cease to exist.

Plaintiffs contend the intervenors have failed to make the requisite showing because their allegations of impairment are speculative and unsupported.[5] Plaintiffs argue in addition that even if the monument management plan were set aside, pre-existing land use plans would have to be revised, providing the intervenors with an opportunity to protect their interests in those proceedings.

_____

[5] Plaintiffs make the ludicrous argument that the intervenors cannot assert their interest would be impaired by the invalidation of the monument's management plan because the lawsuit does not challenge the management plan per se. It would appear obvious that if the Presidential Order creating the monument were to be held invalid and the monument were to cease to exist as such, its management plan would cease to exist as well. As we discuss above, the potential invalidation of the monument and the plan under which it is maintained demonstrate that the disposition of this action "may as a practical matter impair or impede" the intervenors' ability to protect their interest in the monument itself.

We find plaintiffs' arguments unpersuasive.

It is undisputed that the management plan presently in place, which reserves the land from public entry and restricts off-road travel, provides greater protection for the intervenors' interests than prior plans. Indeed, the Utah Association of Counties brought this lawsuit expressly because they believed creation of the monument improperly thwarted the operation of an underground coal mine that would presumably have proceeded under previous plans. It is thus not speculative to conclude that the protection accorded the intervenors' interest in preserving the wilderness nature of the monument land would be diminished if the land were to lose its designation as a national monument.

Plaintiffs also contend the intervenors' interests are not impaired because they would be able to participate in the formulation of a revised land use plan for the area should it lose its monument status. Again we disagree. "[W]here a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Serv.*, 736 F.2d 384, 387 (7th Cir. 1984). Moreover, the possibility of impairment is not eliminated by the intervenors' opportunity to participate in the formulation of a revised land use plan that, at most, would not provide the level of protection to the intervenors' interests that the current plan

-16-

offers.

Finally, as the intervenors point out, this court has held that "the *stare decisis* effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)." *See Coalition*, 100 F.3d at 844. The intervenors argue that a judgment in favor of plaintiffs in this case would impair the intervenors' interest in promoting their environmental protection goals by seeking presidential designation of other national monuments in the future.

In light of these considerations, we conclude the intervenors have demonstrated that their interests may be impaired or impeded by the disposition of this lawsuit.

# V

## Adequacy of Representation

The intervenors have shown that their motion to intervene was timely, they claim an interest relating to the property which is the subject of the action, and as a practical matter their ability to protect that interest may be impaired or impeded by the disposition of the action. Under Rule 24(a)(2), they are therefore entitled to intervene as of right unless that interest "is adequately represented by existing parties." "Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing

-17-

that representation 'may' be inadequate." *Sanguine*, 736 F.2d at 1419 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also Coalition*, 100 F.3d at 844. The possibility that the interests of the applicant and the parties may diverge "need not be great" in order to satisfy this minimal burden. *Natural Res. Def. Council v. United States Nuclear Reg. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978).

The district court stated without analysis that the government would adequately represent the interests of the intervenors in defending the legality of President Clinton's designation of the monument. On appeal, plaintiffs argue the district court was correct, pointing out that the interests of the government and the intervenors are identical and that the intervenors have not articulated any arguments they wish to make that the government could not make. In response, the intervenors assert that under this court's authority, an intervenor need only show the possibility of inadequate representation. The intervenors rely on cases from this and other circuits holding that this showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest.

A review of the authority reveals that the intervenors' argument has merit.

In *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381 (10th Cir. 1977), the plaintiff brought suit against a federal agency alleging that a section of the Interstate Commerce Act and regulations promulgated under the Act were unconstitutional. Common carriers protected by the Act sought to intervene on the basis that a judgment invalidating the Act and regulations would impair the carriers' interest by removing the Act's protection, thereby subjecting them to highly injurious unregulated competition. In holding that the applicants had shown inadequacy of representation, we pointed to authority stressing that the showing is met when the applicant for intervention has expertise the government may not have. We also looked to cases holding that government representation may not adequately represent private interests because the government protects the public interest.

> We have here also the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible. The cases correctly hold that this kind of a conflict satisfies the minimal burden of showing inadequacy of representation.

*Id.* at 384.

We followed *National Farm Lines* in *Coalition*, pointing out that in both cases the federal agency sued "must represent the public interest, which may differ from" the applicant's particular interest. *Coalition*, 100 F.3d at 845. Although we recognized in *Coalition* that a presumption of adequate

-19-

representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation, *see id.* (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)), we held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest, *see id.* Our conclusion that government representation might prove to be inadequate was also bolstered by cases from other circuits holding that an intervenor's interest would not be adequately represented by a government entity that must represent the broader public interest. *See id.* (citing cases); *see also Mausolf*, 85 F.3d at 1302-04 ("When managing and regulating public lands, to avoid what economists call the 'tragedy of the commons,' the Government must inevitably favor certain uses over others."); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) ( per curiam) (government representation of broad public interest will not necessarily coincide with would-be intervenor's narrower interest even though they share common ground); *Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992) ("a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity"); *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991) (although would-be intervenor and government entity share objectives, entity not adequate representative due to

obligation to represent interests of general public including those with conflicting views).

Plaintiffs argue that *National Farm Lines* and *Coalition* are distinguishable because in those cases the interest of the government and the applicants for intervention did not coincide. They assert the interests are identical here because both the government and the intervenors have the same objective–to sustain the creation of the monument. As the above cases make clear, however, the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor. "[E]ven the government cannot always adequately represent conflicting interests at the same time." *Mausolf*, 85 F.3d at 1303. This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest.

Plaintiffs also maintain that, given the government's past conduct in this litigation, there is nothing to indicate it will not continue to vigorously represent the interest of the intervenors in defending the creation of the monument. However, "it is not realistic to assume that the agency's programs will remain

static or unaffected by unanticipated policy shifts." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998). The government has taken no position on the motion to intervene in this case. Its "silence on any intent to defend the [intervenors'] special interests is deafening." *Conservation Law Found.*, 966 F.2d at 44. We conclude that under the authority of this and other circuits, the intervenors have met the minimal burden of showing that their interests may not be adequately represented by the existing parties.

The order denying the motion to intervene under Rule 24(a)(2) is **VACATED** and the matter is **REMANDED** to the district court with directions that the application to intervene as of right be granted.