**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 5 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UTAHNS FOR BETTER
TRANSPORTATION; ROSS C.
"ROCKY" ANDERSON, in his
official capacity as Mayor of Salt Lake
City, Utah,

    Plaintiffs,

  and

SIERRA CLUB,

    Plaintiff - Appellee,

  v.

UNITED STATES DEPARTMENT
OF TRANSPORTATION; NORMAN
MINETA, Secretary, United States
Department of Transportation;
FEDERAL HIGHWAY
ADMINISTRATION; MARY E.
PETERS, Administrator, Federal
Highway Administration; DAVID
GIBBS, Division Administrator of the
Utah Division of the Federal Highway
Administration; U.S. ARMY CORPS
OF ENGINEERS; MICHAEL J.
CONRAD, Colonel, District Engineer
of the Sacramento District; BROOKS
CARTER, Chief of the Intermountain
Regulatory Section; FEDERAL
TRANSIT ADMINISTRATION;
JENNIFER L. DORN, Administrator

No. 01-4117

of the Federal Transit Administration; LEE WADDLETON, Regional Administrator of the Federal Transit Administration and his successor,

    Defendants.

----------------------------

STATE OF UTAH, UTAH DEPARTMENT OF TRANSPORTATION,

    Intervenors.

----------------------------

ADVOCATES FOR SAFE AND EFFICIENT TRANSPORTATION,

    Movant - Appellant.

---

**Appeal from the United States District Court
for the District of Utah
(D.C. Nos. 1:01-CV-7-J and 1:01-CV-14-J)**

---

Patrick Gallagher, Alex Levinson, Aaron Isherwood, San Francisco, California, and Joro Walker, Salt Lake City, Utah, for Appellee Sierra Club.

David M. Friedland, Gus B. Bauman, David M. Williamson, Washington, D.C., and Kenneth W. Yeates and Mark A. Wagner, Salt Lake City, Utah, for Appellant Advocates for Safe and Efficient Transportion.

---

Before **SEYMOUR, McWILLIAMS,** and **GIBSON**,[*] Circuit Judges.

---

[*] The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

**GIBSON**, Circuit Judge.

The trade association Advocates for Safe and Efficient Transportation, which refers to itself as ASET,[1] appeals from an order of the district court denying its motion to intervene in this action brought by the Sierra Club against the United States Department of Transportation and other agencies and officials of the United States. See Utahns for Better Transp. v. United States Dep't of Transp., Civil No. 1:01CV0014J (D. Utah May 16, 2001) (order denying intervention).[2] We reverse and remand with directions to grant ASET's motion to intervene.

Under § 176 of the Clean Air Act, certain regional transportation plans must receive the approval of the federal government to ensure conformity with that region's air quality plan. 42 U.S.C. § 7506(c) (1994 & Supp. V 1998); see 40 C.F.R. § 93.118(a) (2001) ("The transportation plan . . . must be consistent with the motor vehicle emissions budget(s) . . . ."). The Sierra Club's complaint alleges, among

---

[1] ASET describes itself as "a coalition of trade associations and organized labor representing the transportation infrastructure community, including contractors, subcontractors, laborers, road builders, home builders, designers, engineers, planners, transportation officials, manufacturers of safety and construction equipment, businesses, and suppliers to the building and transportation trades."

[2] Utahns for Better Transportation and Ross C. "Rocky" Anderson, Mayor of Salt Lake City, are listed as plaintiffs as a result of consolidating similar claims, which they had raised separately, with those of the Sierra Club.

other things, that the federal defendants did not follow proper procedure in approving various transportation plans and projects in the Wasatch Front region in Utah. The Sierra Club specifically asks for: "an order vacating the Defendants' approvals of the Wasatch Front [transportation plans], requiring Defendants to withdraw all such approvals and prohibiting Defendants from funding, approving or assisting any capacity-expanding highway project"; an order declaring the transportation plans invalid; "[a]n injunction vacating Defendants' approvals of the [transportation plans]"; and "[a]n injunction prohibiting the Defendants from approving, funding or assisting in any way any capacity-expanding highway project in the Wasatch Front region, including but not limited to the Legacy Parkway project, until such time as Defendants comply with the law."

ASET sought to intervene, and in its motion to do so alleged as follows:

(1) ASET has timely moved to intervene before any answer or responsive paper has been filed;

(2) ASET's members have significant and substantial interests in the Salt Lake-Ogden region that are explicitly identified in the statutes implicated and claims raised in this action. Among other interests, (a) ASET's members have existing contracts and pending bids for approved transportation projects specifically attacked in this lawsuit; (b) ASET's members also have economic opportunities, including future contract awards and bid opportunities, at stake; (c) ASET's members include transportation officials that will be impacted by any decision in this matter; (d) ASET's members use and enjoy the present and planned transportation infrastructure at issue in this litigation for their business, personal, commuting, and recreational needs; (e) ASET and its members have participated for years in the development of the transportation plans and programs targeted in

- 4 -

the Complaint; and finally, (f) ASET represents Salt Lake area citizens and businesses who will be marginalized, absent intervention, by Plaintiff's attack on Utah transportation planning in this and another lawsuit;

(3) ASET members' interests will be substantially impaired by this lawsuit and the relief requested. This lawsuit threatens to halt all projects, project funding, project contracts and bids, and implementation of approved transportation infrastructure improvements that are crucial to ASET members' interests. ASET will be unable to protect these interests absent intervention because this lawsuit circumvents the public participation process mandated by federal and state transportation planning statutes and destabilizes and delays the planning process; and

(4) The Federal Defendants cannot adequately represent ASET's interests because of potentially adverse positions regarding existing and future contracts and the fact that Federal Defendants do not represent ASET's specific economic and user interests.

The district court conducted a hearing on May 1, 2001.[3] The hearing commenced with counsel for ASET announcing that a compromise had been reached between ASET and the Sierra Club, "which would in general entail ASET participating in only certain counts and only on the second phase of briefing," but that the parties needed some time to negotiate details. The district court responded by saying: "No. I think we need to decide now whether you're here or whether you're not and if you're here in what form you're here. I have some genuine question myself as to whether you're here at all." ASET's counsel asserted that ASET "should be allowed to intervene because our members have particular interests that are at stake

_____

[3] The State of Utah and the Utah Department of Transportation also filed motions to intervene. At the hearing, no one objected to their intervention and their motions were granted.

in this litigation and as a trade association we're entitled to represent their interests. They have asked us . . . to represent them." ASET was really "in the same situation as Sierra Club," ASET's counsel continued, "representing its individual members here." The following excerpts from the hearing transcript are representative of the remainder of the discussion between the district court judge and counsel for ASET:[4]

> THE COURT: Yeah, but you've got to have an interest you see, you got to have an interest.
> MR. FRIEDLAND: The interest is the contract that the members have –
> THE COURT: Well if they want to vindicate their contracts tell them to intervene or tell them to make an application to intervene.
> MR. FRIEDLAND: They may clearly do that but they would prefer that the trade association litigate these issues on their behalf and the Supreme Court has said that trade associations may do so.
> THE COURT: I don't know of any case that says that you may vindicate a specific contract in which you don't have an interest.
> . . . .
> THE COURT: Yeah. Well I'm trying to define the association's interest separately and apart from the contractors' interests. The association has different interests than the contractors do. The contractors haven't asked to intervene here as we pointed out before.
> MR. WILLIAMSON: Yes, Your Honor.
> THE COURT: The association wants to do well by their members I'm sure.
> MR. WILLIAMSON: Your Honor, the principal –
> THE COURT: I'm interested in differentiating between the Association's interest and the contractors' interest.
> MR. WILLIAMSON: Your Honor, there is no, the interests are identical. We in a sense are entitled to borrow our individual members'

---

[4] Counsel for the United States were present at the hearing, but made no comment directed to ASET's motion to intervene. The government has also chosen not to file a brief before this court.

interests as a trade association. That principal is beyond the vale. It's established as I mentioned in 3 or 4 cases.

After ASET's counsel had stated that the relief the Sierra Club was seeking included "a declaration that the regional transportation plan is illegal," the court concluded:

> THE COURT: As I understand it they are nothing [sic] seeking relief against you and indeed they're not seeking relief against any of your members. The relief that they are seeking is footed on the alleged deficiencies of the process and purportedly the failure on the part of affected governmental units to do what they claim is an inadequate job and I think under the circumstances what I ought to do here is to deny your motion to intervene as a party which I will do but I will grant you amicus status.
> You're welcome to give voice to your point of view as amicus .
> . . .

## I.

The statements of the district judge reveal his concerns about ASET speaking for its members. The judge appeared willing to consider petitions to intervene by the individual members, but expressed the view that ASET had no standing to assert its members' rights. The district court's conclusion, however, is contrary to the teaching of the Supreme Court. In Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977), Chief Justice Burger, speaking for a unanimous court, stated:

> [W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

- 7 -

Id. at 343; accord New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 9 (1988) ("Under Hunt, an association has standing to sue on behalf of its members when those members would have standing to bring the same suit."). The district court erred in rejecting the motion on the ground that ASET had no standing to assert the rights of its members.

II.

Under Federal Rule of Civil Procedure 24(a)(2):

> [A]n applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."

Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1249 (10th Cir. 2001) (quoting Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir. 1996) (quoting Fed. R. Civ. P. 24(a)(2))). The district court did not discuss any of the factors enumerated in Rule 24(a) with respect to intervention as of right, but instead merely offered ASET the opportunity to file a brief as amicus curiae. However, "the right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)." Coalition, 100 F.3d at 844. The Sierra Club did not argue that ASET's petition to intervene was not timely. Since the district court did not make findings regarding the remaining requirements, we look directly to the record in conducting our

analysis.  See Utah Ass'n of Counties, 255 F.3d at 1249-50; Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 382 (10th Cir. 1977).

A.

We have had frequent occasion to analyze what sort of interest is required by Rule 24(a)(2).  In Coalition we said that the intervenor's would-be interest in the proceedings must be "direct, substantial, and legally protectable."  100 F.3d at 840 (quoting Vermejo Park Corp v. Kaiser Coal Corp., 998 F.2d 783, 791 (10th Cir. 1993)).  The sufficiency of an applicant's interest is a highly fact-specific determination.  Id. at 841.  We observed further that "[o]ur court has tended to follow a somewhat liberal line in allowing intervention."  Id. (quoting Nat'l Farm Lines, 564 F.2d at 384).  We have recently described the interest test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Utah Ass'n, 255 F.3d at 1251-52 (quoting Coalition, 100 F.3d at 841).

The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.  In National Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 382 (10th Cir. 1977), representatives of motor vehicle common carriers sought to intervene in an action to declare a section of the Interstate Commerce Act and regulations promulgated under it unconstitutional.  The

representatives alleged that a decision adverse to the interest of the carriers would "render unenforceable a statutory scheme which directly protects their economic interests and would, as a result, subject them to unregulated competition which would be highly injurious." 564 F.2d at 382. We reversed the district court's denial of intervention. Id. at 384.

In light of this precedent, we conclude ASET has the requisite interest to intervene as of right. The grounds ASET sets forth for intervention outline specific economic interests. In fact, at oral argument the Sierra Club stated it was prepared to concede ASET members had existing contracts relevant to this case. In addition, ASET's membership includes transportation, planning, and engineering officials who have experience with, and have contributed to, the transportation plans at issue here. ASET further has submitted that its members, like other businesses and individuals in the Salt Lake region, depend on the transportation system for commuting and recreation, delivering materials and equipment, and conducting their business. Some of these interests are similar to those relied on by the Sierra Club in its own complaint.

In National Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d 1341 (10th Cir. 1978), potential recipients of licenses for the operation of uranium mills in New Mexico sought to intervene in an action by environmentalists against government agencies seeking to prohibit the

agencies from issuing licenses without first preparing environmental impact statements. The court first observed that the outcome of the litigation could have profound economic effect on the would-be intervenors. This economic effect gave them an interest within the meaning of Rule 24(a)(2). This court then further stated that:

> There are other reasons for allowing intervention. There is some value in having the parties before the court so that they will be bound by the result. American Mining Congress represents a number of companies having a wide variety of interests. This can, therefore, provide a useful supplement to the defense of the case.

Id. at 1346. The same can be said of ASET here. See Utah Association, 255 F.3d at 1254 ("[T]he stare decisis effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2).") (quoting Coalition, 100 F.3d at 844).

## B.

"This court has pointed out that 'the question of impairment is not separate from the question of existence of an interest.'" Utah Ass'n, 255 F.3d at 1253 (quoting Natural Res. Def. Council, 578 F.2d at 1345). In this case, to decide whether ASET's interests would be impaired by the Sierra Club's suit requires our attention to the Sierra Club's complaint, which seeks an order vacating the approval of the transportation plans, requiring the federal defendants to withdraw all such approvals, and prohibiting them from funding, approving, or assisting any capacity-

expanding highway projects. With ASET's interest in the transportation plans described above, we have no hesitation in concluding that the Sierra Club's action may as a practical matter impair or impede ASET's ability to protect its members' interests. See id. at 1253.

C.

With ASET demonstrating timeliness, interest, and impairment, Rule 24(a)(2) entitles ASET to intervene as of right unless that interest is adequately represented by existing parties. As we observed in Utah Association, "that burden is the 'minimal' one of showing that representation 'may' be inadequate." 255 F.3d at 1254 (quoting Sanguine, Ltd. v. United States Dep't of Interior, 736 F.2d 1416, 1419 (10th Cir. 1984)). "The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." Id. (quoting Natural Res. Def. Council, 578 F.2d at 1346). In this case, ASET would be relying on governmental entities to represent its interests. We have repeatedly pointed out that in such a situation the government's prospective task of protecting "not only the interest of the public but also the private interest of the petitioners in intervention" is "on its face impossible" and creates the kind of conflict that "satisfies the minimal burden of showing inadequacy of representation." Id. at 1255 (quoting National Farm Lines, 564 F.2d at 384). In addition, ASET can provide expertise the government agencies may be lacking. See id. (pointing out that sufficient showing

on this aspect of Rule 24(a)(2) is made when the would-be intervenor has expertise the government may not have).  Finally, as in Utah Association, the government entities' "silence on any intent to defend the [intervenors'] special interests is deafening."  Id. at 1256 (quoting Conservation Law Found. v. Mosbacher, 966 F.2d 39, 44 (1st Cir. 1992)).

III.

We thus reverse the order of the district court and remand with directions to enter an order allowing ASET to intervene as of right.