**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILDEARTH GUARDIANS,

        Plaintiff-Appellee,

    v.

NATIONAL PARK SERVICE,

        Defendant.

------------------------------------------

SAFARI CLUB INTERNATIONAL
FOUNDATION, and SAFARI CLUB
INTERNATIONAL,

        Movants-Appellants.

No. 08-1479

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 08-cv-608-MSK-CBS)**

---

Anna M. Seidman (Douglas S. Burdin with her on the briefs), Safari Club
International, Washington, District of Columbia for Appellants.

Michael Ray Harris, Assistant Professor & Director, Environmental Law Clinic,
Sturm College of Law, University of Denver, Denver, Colorado for Appellee.

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

This appeal arises from WildEarth Guardians' lawsuit challenging the National Park Service's proposal to reduce the elk population in Rocky Mountain National Park. Safari Club International and Safari Club International Foundation (referred to together as Safari Club) are two organizations representing hunting and conservation interests which participated in the administrative proceedings that led to the promulgation of the National Park Service's elk population management plan. Safari Club sought to intervene as of right in WildEarth's lawsuit as a party defendant pursuant to Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, to intervene permissively, under Federal Rule of Civil Procedure 24(b).

The district court denied Safari Club's motion to intervene and Safari Club appealed. Because "[a]n order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to an action," *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. DOI*, 100 F.3d 837, 839 (10th Cir. 1996), we have jurisdiction under 28 U.S.C. § 1291.

We find the district court erred in ruling on Safari Club's motion to intervene. Safari Club demonstrated that it has a substantial interest in the district court proceedings and that its interest might be impaired as a result of the litigation. Further, on the record presented, we decline to determine whether any of the existing parties can adequately represent Safari Club's interest.

Accordingly, we REVERSE and REMAND with instructions to consider whether the National Park Service can adequately represent Safari Club's interest.[1]

## I. Background

After a lengthy administrative proceeding, the National Park Service (sometimes referred to as the NPS) established a plan to reduce the negative effects of an oversized elk population at Rocky Mountain National Park (sometimes referred to as RMNP). In developing the Rocky Mountain National Park Elk and Vegetation Management Plan, the NPS considered five alternative action plans: (1) no action; (2) immediate lethal removal; (3) gradual lethal removal together with the use of fencing and distribution techniques; (4) fertility control combined with gradual lethal removal; and (5) lethal removal coupled with the release of predatory, sterile gray wolves.

In accordance with required administrative and environmental procedures, the NPS adopted the third alternative elk management plan— combining gradual lethal removal, fencing, and dispersal. This plan calls for "NPS Staff and authorized agents" to lethally reduce, i.e., "cull," the elk over time. Under the plan, "authorized agents" can include "qualified volunteers." The plan requires that all individuals participating in culling activities be certified in firearms training, be specially trained in wildlife culling, and pass a proficiency test.

---

[1] Because we reverse the district court's decision and remand the case for further consideration, we need not address the district court's denial of permissive intervention at this juncture.

Safari Club supports and advocates the conservation and management of wildlife, and promotes using hunting, among other things, as a conservation and management tool. The group is active nationally in efforts to conserve and manage wildlife, including the gray wolf. The organization's members enjoy recreational activities, including hunting, in areas near RMNP. While the NPS was considering the alternative action plans, Safari Club submitted written comments supportive of managing wildlife generally and at RMNP specifically, controlling the park's elk population, and using volunteers to carry out culling activities. Following the NPS's selection of the third action plan, several Safari Club members volunteered as "authorized agents" to participate in elk culling at RMNP.

After the NPS announced which elk management plan it had chosen, WildEarth Guardians, an environmental interest organization opposed to the adopted plan, filed an action contesting the plan in district court. WildEarth claimed that in formulating the plan the NPS violated the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347, by not considering the introduction of predatory, fertile gray wolves as a means of managing RMNP's elk population. WildEarth also claimed that the plan violates the NPS Organic Act, 16 U.S.C. §§ 1–4, and the Rocky Mountain National Park Act, 16 U.S.C. §§ 191–195a, because "culling" is "hunting" and those laws prohibit hunting in the national

park.[2]  Finally, WildEarth claimed the plan violates the Endangered Species Act, 16 U.S.C. §§ 1531–1544, because it does not adequately address conservation of the gray wolf.  In addition to seeking declaratory relief for those claims,[3] WildEarth requested that the district court compel the NPS to consider releasing fertile gray wolves as an elk management alternative, enjoin the NPS from hunting elk, and compel the NPS to take measures supporting gray-wolf conservation at RMNP.

Safari Club moved to intervene as a defendant in WildEarth's suit against the NPS.  In its motion to intervene and supporting memorandum, Safari Club elaborated on its interest in supporting the NPS's elk management plan, including

---

[2] In its complaint, WildEarth stated:

> In the Organic Act, Congress prohibited hunting in national parks unless expressly granted by a park's unique enabling language.  Although the Secretary has discretion when deciding how to affect conservation within national parks, the Secretary cannot authorize activities in direct contradiction to the purposes of the Act.  This discretionary power includes the ability to destroy animal and plant life that is detrimental to the use of national parks.  However, the Organic Act must be read as a whole and in light of each national park's unique enabling language.  Thus, if the Organic Act conflicts with an individual park's enabling act, the park's enabling act governs.  *The RMNP Act expressly prohibits 'all hunting, killing, wounding, or capturing at any time of any wild bird or animal. . . .'*

J.A., Vol. I, at 20–21 (internal citations omitted and emphasis added).

[3] WildEarth, in its complaint, requested that the district court provide: "[d]eclaratory judgment that the Park Service's failure to prohibit hunting within the Park boundaries is in violation of the Organic Act and the RMNP Act" and "[d]eclaratory judgment that 'controlled culling' is hunting."  J.A., Vol. I, at 25.

(1) its endorsement of sustainable use wildlife management and conservation techniques, (2) its members' interests in hunting and otherwise enjoying wildlife in and near RMNP, (3) its approval of the use of volunteers in culling activities, and (4) its desire to prevent gray wolves from being used to control RMNP's elk population. Safari Club also expressed an interest in supporting qualified hunters' ability to participate in wildlife management activities conducted on national park lands generally.[4]

Safari Club asserted those interests would be impaired or impeded if WildEarth succeeded in its case. In particular, Safari Club noted that a decision in favor of WildEarth would be contrary to its interests in several ways: it would (1) cause the methods selected to manage and conserve elk at RMNP, which Safari Club supports, to be set aside or altered; (2) lead to the introduction of gray wolves as a means of managing RMNP's elk population, which Safari Club

_____

[4] In its brief in support of its motion to intervene, Safari Club stated that "[WildEarth] contends that the National Park Service violated the Organic Act and the Rocky Mountain National Park Act by choosing to cull the elk," J.A., Vol. I, at 32, that "WildEarth [] wrongfully argue[s] that the 'cull' constitutes a 'hunt,'" *id.*, that "if [WildEarth] obtains declaratory relief, federal agencies . . . could stop qualified hunters from participating in future wildlife management activities on federally administered lands," *id.* at 33, and that "[s]uch a result could seriously interfere with wildlife management throughout the United States and could deprive hunters and outdoor enthusiasts of safe and productive wildlife oriented opportunities," *id.* Relatedly, in its reply brief, Safari Club stated, "[Safari Club] . . . demonstrate[s] the requisite interest since [its] ability to participate in the management of elk [at] RMNP and [its] ability to continue to enjoy hunting and other recreational activities in the vicinity of RMNP as well as within and around other federally administered lands are among several interests at risk from [WildEarth]'s litigation challenges." *Id.* at 110.

opposes; and (3) prevent, contrary to Safari Club's preferences, volunteers from participating in culling activities at RMNP and other national parks.[5]

Finally, Safari Club contended the NPS could not adequately represent it. Safari Club argued the NPS and the public do not necessarily share some of its specific interests, such as protecting and furthering the use and enjoyment of hunting on public lands, opposing the release of gray wolves for wildlife management purposes, and supporting the participation of volunteers in culling activities.

The district court denied Safari Club's motion to intervene. In doing so, it identified and assessed two interests of Safari Club: (1) preserving the quality of the opportunities to use lands and wildlife near RMNP, and (2) maintaining the possibility that volunteers might participate in culling activities at RMNP. The district court held that the former was not at significant risk of impairment, because a decision in WildEarth's favor would only cause the elk management issue to be remanded to the National Park Service for further consideration and would not lead with certainty to a release of gray wolves. The district court found the latter too speculative, because, at that point, Safari Club's members possessed nothing more than an abstract hope of being selected to participate in

_____

[5] Safari Club, in its supporting memorandum, stated: "if [WildEarth] is successful, Safari Club members will be deprived of the opportunity to participate in sustainable use wildlife management activities such as the cull [at Rocky Mountain National Park]." J.A., Vol. I, at 42.

culling activities at RMNP. Because the district court determined Safari Club did not set forth an interest at risk of being impaired, the district court did not consider whether the NPS is capable of adequately representing Safari Club's interest.

## II. Discussion

On appeal, Safari Club contends the district court erred in failing to credit its interests in support of intervention. No one disputes the motion to intervene was timely filed. The only challenge is to the district court's assessment of the requirements for intervention of right under Rule 24(a)(2). We review *de novo* the district court's application of Rule 24. *See Coalition*, 100 F.3d at 840.

We conclude Safari Club satisfies the interest and impairment requirements of Rule 24.

### A. Preservation of Argument

As an initial matter, WildEarth contends Safari Club did not adequately assert its interest in defending the NPS's hunting and culling proposals before the district court. "Failure to raise an issue in the district court generally constitutes waiver." *Rios v. Ziglar*, 398 F.3d 1201, 1209 (10th Cir. 2005); *see also Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (requiring that an issue first be "presented to, considered[, and] decided by the trial court") (internal quotation marks omitted)). We disagree with WildEarth's contention. Reading WildEarth's complaint and Safari Club's motion to intervene, supporting

memorandum, and reply brief in conjunction with one another makes clear Safari Club sufficiently articulated all of the interests it asserts on appeal.

In its complaint, for example, WildEarth contended the enabling acts of individual national parks govern when they conflict with the Organic Act. WildEarth argued the Organic Act does not permit hunting in a national park unless the park's unique enabling language expressly allows it. WildEarth asserted the NPS's elk management plan violates the RMNP Act, which forbids hunting. Based on those contentions, WildEarth sought declarations that "culling" is "hunting" and that the NPS's failure to prohibit hunting at RMNP violated the language and logic of the Organic Act and the park's enabling legislation.

Safari Club filed its motion to intervene in direct response to WildEarth's complaint. In its memorandum in support of its motion, Safari Club stated that, if WildEarth obtains the declaratory relief it seeks, "Safari Club members will be deprived of the opportunity to participate in sustainable use wildlife management activities" at RMNP, J.A., Vol. I, at 42, and "federal agencies . . . could stop qualified hunters from participating in future wildlife management activities on federally administered lands," "seriously interfer[ing] with wildlife management throughout the United States and . . . depriv[ing] hunters and outdoor enthusiasts of safe and productive wildlife oriented opportunities," *id.* at 33. Further, Safari

Club asserted that WildEarth seeks the elimination of the culling aspect of the NPS's plan by virtue of WildEarth's interpretation of the RMNP Act.

Finally, in its reply brief, Safari Club stated its interest in hunting near RMNP, as well as on or near other federal lands, could be affected by a broad district court ruling:

> [Safari Club's] ability to participate in the management of elk [at Rocky Mountain National Park] and [its] ability to continue to enjoy hunting and other recreational activities in the vicinity of [the park] as well as within and around other federally administered lands are . . . at risk from [WildEarth]'s litigation challenges.

J.A., Vol. I, at 110.[6]

When considered in the context of WildEarth's complaint, the totality of Safari Club's statements sufficiently identified Safari Club's interest in protecting wildlife management techniques that incorporate hunting and culling. *See Stone v. First Wyo. Bank*, 625 F.2d 332, 348 (10th Cir. 1980) (giving a liberal reading to pleadings and motions submitted to the trial court and finding that the issue in question had been sufficiently preserved).

---

[6] Further, Safari Club restated its interests in its motion for reconsideration:

> [Safari Club] based [its] application to intervene on [its] long-standing interest in elk and wolf management and conservation, [its] recreational interests in elk hunting in the vicinity of RMNP, [its] participation in the process by which the Plan had been developed and decided, and the interest of [Safari Club] members in participating as qualified agents of the NPS in the cull . . . .

J.A., Vol. I, at 149.

Having concluded that Safari Club adequately identified its claims before the district court, we turn to the requirements for intervention as of right.

B. Intervention as of Right

Based on its interest in the outcome of the WildEarth litigation, Safari Club sought to intervene as of right under Rule 24(a)(2).

1. *Elements of Intervention as of Right*

Rule 24(a)(2) entitles a movant to intervene as of right if: (1) the movant claims an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the litigation may, as a practical matter, impair or impede the movant's interest; and (3) the existing parties do not adequately represent the movant's interest. *See* Fed. R. Civ. P. 24(a)(2); *Coalition*, 100 F.3d at 840. We follow "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009) (internal quotation marks, brackets, and citation omitted). The factors of Rule 24(a)(2) are intended to "capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation," and "[t]hose factors are not rigid, technical requirements." *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (*en banc*).

The *interest* element is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 1195 (internal quotation marks and citation omitted).

-11-

The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001). With respect to Rule 24(a)(2), we have declared it "indisputable" that a prospective intervenor's environmental concern is a legally protectable interest. *San Juan*, 503 F.3d at 1199 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–563 (1992) ("[T]he desire to use or observe an animal species, even for purely [a]esthetic purposes, is undeniably a cognizable interest for purpose of standing.")).

For example, in *San Juan*, we found the prospective intervenors had a legally protectable interest in defending a National Park Service rule. We concluded their concern that the plaintiff's success could lead to environmental damage to the area in question from vehicular traffic justified party status. *See* 503 F.3d at 1167–70, 1199. Similarly, in *Clinton*, we held that the prospective intervenors, who wished to intervene as defendants in a suit challenging the establishment of a national monument, had a cognizable interest in the continued existence of the monument and its restrictions on public entry. Among other things, their interests arose from a desire to advance conservation goals by preserving the undeveloped quality of the lands encompassing the monument. In crediting these interests, we considered "persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its

-12-

habitat have a protectable interest in litigation that threatens those goals." *Clinton*, 255 F.3d at 1252. In both *San Juan* and *Clinton*, the prospective intervenors advocated setting aside the land at issue, participated in the government's decision-making process at the administrative level, and visited the contested sites for aesthetic and recreational purposes. *See San Juan*, 503 F.3d at 1199; *Clinton*, 255 F.3d at 1251.

The second element—*impairment*—presents a minimal burden. *See WildEarth Guardians*, 573 F.3d at 995. "[A] would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Id.* (internal quotation marks and citation omitted). Our cases recognize that the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan. *See Clinton*, 255 F.3d at 1254. "[T]he mere availability of alternative forums is not sufficient to justify denial of a motion to intervene" because "at most," participating in a new proceeding "would not provide the level of protection to the intervenors' interests that the current plan offers." *Id.* In fact, for purposes of Rule 24(a)(2), sufficient impairment may result even from the "*stare decisis* effect" of a district court's judgment. *Utahns For Better Transp. v. DOT*, 295 F.3d 1111, 1116 (10th Cir. 2002); *Coalition*, 100 F.3d at 844. "We may consider any significant legal effect

in the applicant's interest and we are not restricted to a rigid *res judicata* test."
*Coalition*, 100 F.3d at 844 (internal quotation marks, brackets, and citation omitted).

*Clinton* provides a useful example of the impairment element. There, the prospective intervenors argued that the land management plan associated with the national monument, which they aided in developing, would be set aside if the plaintiffs succeeded in their case. *See Clinton*, 255 F.3d at 1253. They pointed out that removing the plan would open up much of the land comprising the monument to unrestricted off-road travel, allowing the wilderness character of the land to be degraded. *See id.* We held that such an outcome would impair their environmental and conservationist interests. *See id.* Notwithstanding the prospective intervenors' ability to participate in any renewed land use decision-making process that would result if the plaintiffs won, we recognized that it was "not speculative to conclude that the protection accorded the [prospective] intervenors' interest in preserving the wilderness nature of the monument land would be diminished if the land were to lose its designation as a national monument." *Id.* at 1254.

In *Coalition*, we likewise held that the impairment element was satisfied, at least in part, based on environmental concerns. In that case, the prospective intervenor had a cognizable interest in the protection of the Mexican Spotted Owl. *See Coalition*, 100 F.3d at 838–39, 844. We found that interest would be

impaired if the plaintiff was granted the relief it requested in its complaint—a

declaration that the government failed to conduct a sufficient assessment of the

owl's condition and an injunction removing the owl from the endangered species

list. *See id.* at 844. In so concluding, we explained:

> The appellant could submit a new petition to [] protect the [o]wl; however, he would, "as a practical matter," be impaired by the *stare decisis* effect of the district court's decision, not to mention the direct effect of a possible permanent injunction. Furthermore, the [o]wl and its habitat would not be protected . . . while [the appellant] tried to lift such a permanent injunction and [the government] considered [his] new petition.

*Id.*

Finally, the *inadequate representation* element of Rule 24(a)(2) also

presents a minimal burden. The movant must show only the possibility that

representation may be inadequate. *See Utahns*, 295 F.3d at 1117. "The

possibility that the interests of the applicant and the parties may diverge need not

be great in order to satisfy this minimal burden." *Id.* We have repeatedly

recognized that it is "on its face impossible" for a government agency to carry the

task of protecting the public's interests and the private interests of a prospective

intervenor. *Id.*; *see also WildEarth Guardians*, 573 F.3d at 996; *Clinton*, 255

F.3d at 1255. Where a government agency may be placed in the position of

defending both public and private interests, the burden of showing inadequacy of

representation is satisfied. *See Utahns*, 295 F.3d at 1117.

With this legal framework in mind, we consider whether Safari Club has satisfied the elements of intervention as of right.

### 2. *Safari Club May be Entitled to Intervene as of Right*

Safari Club contends it satisfies Rule 24's elements. It argues its interest in the management and conservation of wildlife at Rocky Mountain National Park and other national parks may be impaired if WildEarth succeeds in its case. Safari Club also argues the National Park Service will not adequately represent that interest. We agree, in part.

*First*, Safari Club demonstrated a sufficient interest, for purposes of Rule 24(a)(2), in maintaining and furthering the use of culling at RMNP and other national parks for wildlife management and conservation purposes.[7] *Cf. Clinton*, 255 F.3d at 1252 (concluding that organizations whose purpose is the protection and conservation of wildlife have a protectable interest). During the administrative decision-making process, Safari Club submitted comments to the NPS demonstrating its interest in and support of the chosen plan, which utilizes

---

[7] In its opposition brief and at oral argument, WildEarth argued that Safari Club did not sufficiently articulate this interest in its motion to intervene. At the hearing it held on Safari Club's motion for reconsideration, the district court appeared to note the same. We conclude, however, that Safari Club satisfactorily stated this interest in its intervention motion. When Safari Club's motion to intervene, supporting memorandum, and reply brief, *see supra* n. 4–5, are viewed in combination with Safari Club's discussion of the use of culling at RMNP in the same documents, and the statements concerning the Organic Act and the equivalence of hunting and culling in WildEarth's complaint, *see supra* n. 2–3, we have no difficulty in finding that the interest was sufficiently stated.

culling as a wildlife management and conservation tool. Moreover, the record demonstrates that the NPS intends to cull elk at RMNP. The plan also evidences the NPS's willingness to consider the use of culling at national parks other than RMNP. Safari Club's articulated interest in furthering the use of culling as a means of wildlife management and conservation, which it pursued during the NPS's administrative proceedings, is not too speculative under our case law to support intervention as of right.

As a final interest, Safari Club has a strong organizational interest in defending and preserving the NPS's interpretation of the Organic Act and individual national park enabling statutes, including the Rocky Mountain National Park Act. If WildEarth were to prevail on its broad legal contentions, this case could establish a precedent that prohibits hunting on these public lands for the purpose of culling overpopulated wildlife absent specific statutory authorization.

In sum, Safari Club has sufficient cognizable interests in the WildEarth litigation to satisfy the first intervention requirement.

*Second*, Safari Club also meets the impairment element. It demonstrated that its interest in maintaining and furthering the use of culling as a wildlife management and conservation tool at RMNP and other national parks might be impaired if the district court decides in WildEarth's favor.

In its complaint, WildEarth requests, among other things, declaratory judgment that "hunting" is "culling" and that, therefore, culling violates the

Organic Act and the RMNP Act. WildEarth also seeks an injunction barring the NPS from culling elk at RMNP. If WildEarth is granted the relief it requests, the NPS would be prohibited from employing culling as a means of managing and conserving wildlife at RMNP. Such a result would directly impair Safari Club's interest.

Further, a practical effect of declaratory judgment in WildEarth's favor may be preventing or, at the very least, significantly discouraging the NPS from utilizing culling for wildlife management and conservation purposes at other national parks. *See Coalition*, 100 F.3d at 844 (stating that we "may consider any significant legal effect in the applicant's interest;" and that, for purposes of Rule 24(a)(2), sufficient impairment may result from the *stare decisis* effect).

In short, Safari Club has shown that its interest in the litigation might be impaired if it is not allowed to intervene.

*Finally*, Safari Club demonstrated they may satisfy Rule 24(a)(2)'s inadequate representation element. However, because the district court denied Safari Club's motion to intervene without reaching the adequacy of representation element, we conclude the best course is to remand the case for the district court to consider the issue in the first instance. The district court found that Safari Club did not identify an interest at risk of impairment and ended its analysis of the elements of intervention as of right there. Rather than confront the inadequate representation issue for the first time on appeal, we will leave it to the district

court to examine initially. *See AIMCO v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1198 (10th Cir. 2010) ("[T]he better practice on issues raised [in] but not ruled on by the district court is to leave the matter to the district court in the first instance.") (internal quotation marks and brackets omitted). We note that a brief from the NPS addressing the adequacy of representation may prove useful in deciding the issue.

In sum, the district court erred by concluding Safari Club did not meet the interest and impairment elements, and by not considering whether the NPS can adequately represent Safari Club's interest.

## III. Conclusion

For the foregoing reasons, we REVERSE and REMAND with instructions to consider whether the NPS is capable of adequately representing Safari Club's interest.