FILED
United States Court of Appeals
Tenth Circuit

November 8, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THE NEW MEXICO OFF-HIGHWAY
VEHICLE ALLIANCE, a New Mexico
nonprofit corporation,

        Petitioner-Appellee,

v.

UNITED STATES FOREST SERVICE,
an agency of the United States
Department of Agriculture; THOMAS
TIDWELL, in his official capacity as
Chief of the United States Forest Service;
MARIA T. GARCIA, in her official
capacity as Santa Fe National Forest
Supervisor; GILBERT ZEPEDA, in his
official capacity as Southwestern Region
Deputy Regional Forester; UNITED
STATES DEPARTMENT OF
AGRICULTURE; TOM VILSACK, in
his official capacity as Secretary of the
United States Department of Agriculture,

        Respondents.

------------------------------

CENTER FOR BIOLOGICAL
DIVERSITY; WILDEARTH
GUARDIANS; SIERRA CLUB,

        Movants-Appellants.

No. 13-2116
(D.C. No. 1:12-CV-01272-WJ-LFG)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **HOLMES**, Circuit Judges.

The Center for Biological Diversity, WildEarth Guardians, and the Sierra Club (collectively, the environmental groups) appeal from the district court's denial of their motion to intervene. Exercising jurisdiction under 28 U.S.C. § 1291,[1] we conclude they are entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2). Accordingly, we vacate the district court's order and remand with directions to grant the motion to intervene.

## BACKGROUND

The New Mexico Off-Highway Vehicle Alliance (NMOHVA) filed a petition for review against the United States Forest Service, the United States Department of Agriculture, and various federal officials (collectively, the Forest Service) challenging a final agency action implementing a Travel Management Plan (the Plan)

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Orders denying intervention are final and immediately appealable. *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1194 (10th Cir. 2010).

for the Santa Fe National Forest and the Final Environmental Impact Statement for Travel Management on the Santa Fe National Forest. The Plan, which designates roads and trails in the Santa Fe National Forest allowing motorized vehicles, significantly reduced the number of roads and trails previously available for motorized vehicle use. The NMOHVA seeks reimplementation of the prior use policy.

The environmental groups moved to intervene as of right under Rule 24(a)(2).[2] Neither the NMOHVA nor the Forest Service opposed the motion.[3] But the district court denied it, finding that although the environmental groups have legally protectable interests that would be impaired without intervention, the Forest Service will adequately represent their interests because the environmental groups and the Forest Service have the same interests. The court reasoned that the Forest Service had taken the environmental groups' position and designed a Plan with the intent to curb the use of off-highway vehicles in the Santa Fe National Forest.

The environmental groups appealed the denial of their motion to intervene.[4] Neither the NMOHVA nor the Forest Service filed an appellate brief.

---

[2] The environmental groups also requested permissive intervention under Fed. R. Civ. P. 24(b). They do not appeal the district court's denial of that request.

[3] Upon filing the administrative record, the Forest Service provided copies to the NMOHVA and the environmental groups.

[4] After filing a notice of appeal, the environmental groups asked the district court to stay proceedings pending appeal. The court granted the unopposed motion.

ANALYSIS

"We review *de novo* the district court's application of Rule 24." *WildEarth Guardians*, 604 F.3d at 1197. Under Rule 24(a)(2), intervention of right is required for a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[5] Thus, we consider: (1) whether the environmental groups have interests in environmental matters concerning the Santa Fe National Forest; (2) whether, as a practical matter, the outcome of the underlying litigation may impair or impede those interests; and (3) whether the NMOHVA or the Forest Service will adequately represent the environmental groups' interests.

Applying Rule 24(a)(2) somewhat liberally, *see WildEarth Guardians*, 604 F.3d at 1198, we, like the district court, can easily determine that the first two elements of the rule are met. It is indisputable that the environmental groups have legally protectable interests in environmental concerns. *See id.* (citing *San Juan Cnty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc)). They participated in the administrative process by submitting comments and by appealing the Plan, at all times expressing concern about the harms to wildlife and waterways,

---

[5] A motion to intervene also must be timely. Rule 24(a). The environmental groups' motion was timely because it was filed two months after the petition for review was filed and only a scheduling order, which was later changed, had been entered in the case.

- 4 -

the density of use, and the interruption of quiet enjoyment of the Santa Fe National Forest by off-highway vehicle traffic. Also, the environmental groups' staff, members, and volunteers regularly enjoy the forest for recreational and aesthetic reasons.

The second element, the impairment element, places a minimal burden on the environmental groups to show that impairment of their interests is possible if leave to intervene is not granted. *See id*. at 1199. As is the case here, "intervention may be based on an interest that is contingent upon the outcome of the litigation." *San Juan Cnty.*, 503 F.3d at 1203 (internal quotation marks omitted); *see also WildEarth Guardians*, 604 F.3d at 1199 ("Our cases recognize that the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan."). The environmental groups would be impaired if the outcome of the district court litigation is other than upholding the Plan. *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001) ("[T]he possibility of impairment is not eliminated by the intervenors' opportunity to participate in the formulation of a revised land use plan that, at most, would not provide the level of protection to the intervenors' interests that the current plan offers.").

The final element, the adequate-representation element, places a minimal burden on the environmental groups to show a possibility that neither of the parties

will adequately represent their interests. *See WildEarth Guardians*, 604 F.3d at 1200. Because the NMOHVA represents opposing interests to the environmental groups' interests, the real question is whether the Forest Service would represent them, since both support the Plan. For the following reasons, we conclude the Forest Service would not do so.

On repeated occasions we have recognized that it is impossible for a government agency to protect both the public's interests and the would-be intervenor's private interests. *Id*. Indeed, "[w]here a government agency may be placed in the position of defending both public and private interests, the burden of showing inadequacy of representation is satisfied." *Id*. This is because

> the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

*Clinton*, 255 F.3d at 1255-56. "This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Id*. at 1256.

Although both the Forest Service and the environmental groups would defend the Plan, we cannot assume that the environmental groups' interests, as evidenced by their comments during the development of the Plan and during their administrative appeal, wholly align with those of the Forest Service. Their extensive comments

directed at the Draft Environmental Impact Statement (DEIS) recommended, among other things, that the Forest Service conduct environmental review of user-created routes, consider a reasonable range of alternatives to protect the forest's natural resources, establish a plan to ensure effective motorized recreation management and enforcement, consider the impacts of motorized dispersed camping and motorized big game retrieval, address the fact that the route system is greater than the Forest Service can afford, decrease route density, consider water quality impacts, further consider noise impact, and analyze cumulative impacts. Balancing various interests, the Forest Service issued a Final Environmental Impact Statement (FEIS). Dissatisfied with the FEIS, the environmental groups administratively appealed, without success.[6] Based on the administrative proceedings, there is no guarantee that the Forest Service will make all of the environmental groups' arguments in litigation.

---

[6]     The environmental groups conceded, however, that they requested only "minor changes," and if the changes were made, they would support the final decision and assist with its implementation. Aplt. App., Vol. 2, at 354. This concession, by itself, is insufficient to suggest that the Forest Service and the environmental groups have identical interests or that the Forest Service will adequately represent the groups' interests. This is especially so because the groups requested during the administrative appeal

> that the Forest Service close all routes in the Jemez District, remove 10 miles of routes from inventoried roadless areas on the Forest; close, or not designate, several user-created routes on the Forest; conduct additional analysis on the environmental effects of various provisions of the Travel Plan; demonstrate that the requirements of Executive Orders 11989 and 11644 were applied to more than 2,000 miles of routes in the Travel Plan; provide additional guidance to the public related to motorized dispersed camping and motorized big game retrieval

(continued)

- 7 -

In addition, there is no guarantee that the Forest Service's policy will not shift during litigation; it may decide to grant the NMOHVA's goals in full or in part. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009) (recognizing that coal mine should not be required to rely on government to protect its interests because government has multiple objectives and could shift policy to embrace environmental objectives).

More to the point, we do not know whether the district court will uphold or enjoin the Plan. For both the Forest Service and the environmental groups, the desired outcome, upholding the plan, is identical and aligned. But there is no assurance of identical and aligned interests if the Plan is not upheld. Before making a decision, the court must balance the various hardship claims. Throughout the administrative proceedings, the environmental groups claimed hardships of their own, distinct from the hardships of the Forest Service, and ones which we have no current information suggesting the Forest Service would pursue. We simply do not know, then, if the Forest Service's and the environmental groups' interests are aligned when it comes to remedy if the Plan is enjoined, even if we do have some information suggesting alignment on the merits. Thus, it is critical here that there is no assurance of aligned interests if the Plan is enjoined.

---

corridors; and urged the Forest Service to select . . . the alternative that best satisfied [its] conservation-based interests.

Aplt. Br. at 24 (citing Aplt. App., Vol. 2 at 343-56).

Finally, the Forest Service "has taken no position on the motion to intervene in this case. Its silence on any intent to defend the [environmental groups'] special interests is deafening." *Clinton*, 255 F.3d at 1256 (internal quotation marks omitted). Accordingly, we conclude that the environmental groups have met their minimal burden of showing that the existing parties may not adequately represent their interests.[7]

---

[7] The dissent comes close to suggesting that the portion of the plurality decision in *San Juan County* discussing adequate representation, joined by only three of the thirteen judges sitting en banc, controls the outcome of this case on the adequacy-of-representation question. We respectfully disagree. The sole issue in *San Juan County* was a narrow one concerning title to a road. *See San Juan Cnty.*, 503 F.3d at 1206 ("We recognize that [the environmental groups] and the [National Park Service] have had their differences over the years regarding Salt Creek Road. But when [the environmental groups] filed [their] application to intervene, the Federal Defendants had only a single litigation objective—namely, defending exclusive title to the road—and [the environmental groups] could have had no other objective regarding the quiet-title claim."). The issue did not require the federal defendants to balance a spectrum of views in furthering the public interest, as here, which might cause them to deviate from the private concerns of the would-be intervenors. Indeed, even the manner in which the federal defendants might exercise authority over the road was not at issue. *See id.* at 1206-07. It simply was a question of ownership. Under those unique circumstances, there was no reason to believe, as to the narrow ownership issue, that the federal defendants' interests were not entirely identical to the would-be intervenors' interests, and that they would not adequately represent those interests.

Subsequent case law emphasizes the narrowness of the holding in *San Juan County*. In *Kane County v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010), this court distinguished cases involving challenges to administrative action, as here, from quiet title actions.

In *WildEarth Guardians*, 573 F.3d at 994, an environmental group sued the federal government after it approved plans allowing a coal mine to vent methane gas from the mine. The mine sought to intervene. Judge Hartz, who authored the decision in *WildEarth Guardians* as well as the plurality decision in *San Juan County* relied on by the dissent, recognized that in *San Juan County* there was a single

(continued)

- 9 -

CONCLUSION

The district court's order denying the motion to intervene is vacated and the

matter is remanded to the district court with directions to grant the motion.


Entered for the Court


Stephen H. Anderson
Circuit Judge

---

litigation objective to quiet title to the road and the would-be intervenors had no other objective. *Id*. at 997. In contrast, in *WildEarth Guardians*, the mine was entitled to intervene as of right because the government had multiple objectives since it represented the public interest and not just the private interests of the mine. *Id*. Also, *WildEarth Guardians* recognized that government policy could shift to embrace environmental goals and therefore the mine "should not be required to rely on the [government] to represent its interests." *Id*.

Lastly, it is notable that the parties in *San Juan County* opposed intervention. 503 F.3d at 1167. In this case, the Forest Service does not contest intervention by the environmental groups, and, thus, has not stated that its interests align with those of the environmental groups or that it will represent their interests.

13-2116, *The New Mexico Off-Highway Vehicle Alliance v. United States Forest Service et al.*

**GORSUCH, J.**, Circuit Judge, dissenting.

Treat like cases alike:  that may be the first and most prosaic duty of the judge.  Like most rules, this one may bear its exceptions.  But the notion is so old and so embedded in our sense of justice that its origins trace back almost as far as our collective memory extends.  Today that commonplace rule leads me to think we should be in the business of affirming rather than reversing the district court's order in this regulatory dispute.

In *San Juan County v. United States*, this court, sitting *en banc*, refused to permit intervention as a matter of right under Fed. R. Civ. P. 24(a)(2).  Exactly as the district court did here.  *Compare San Juan*, 503 F.3d 1163, 1203-07 (10th Cir. 2007), *with* Maj. Op. at 3.

The *en banc* plurality in *San Juan* issued the narrowest and so controlling ruling, *see Marks v. United States*, 430 U.S. 188, 193-94 (1977), and it held that Rule 24(a)(2) doesn't permit intervention as a matter of right if an existing party already adequately represents that interest.  Exactly as the district court did here. *Compare San Juan*, 503 F.3d at 1203, *with* Maj. Op. at 3.

The *en banc* plurality acknowledged that the government and the would-be intervenors had locked horns before, but observed that the lawsuit brought them together around a single, shared legal objective.  Exactly as the district court did here.  *Compare San Juan*, 503 F.3d at 1204, *with* Maj. Op. at 3.

The *en banc* plurality noted that the would-be intervenors were worried that the government might not make the right arguments in pursuit of their shared legal objective, that the government's objective could shift during the litigation, or that other rifts might emerge during the life of the case. But the plurality held speculation of this sort isn't enough to justify intervention as a matter of right under Rule 24(a)(2). Exactly as the district court did here. *Compare San Juan*, 503 F.3d at 1206-07, *with* Maj. Op. at 7-8.

Finally, the *en banc* plurality explained that if an actual, non-speculative difference emerged between the would-be intervenors and the government during the life of the lawsuit, *that* would be the proper time to consider intervention, not before. Exactly the same holds true here. *See San Juan*, 503 F.3d at 1207; *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 958 (3d Cir. 2012).

Intervention confers much more than the power to argue before the court as an *amicus* (a role no one's been denied in our case). An intervenor becomes a full-fledged party, able to conduct discovery, file motions, and add new issues and complexity and delay to the litigation. Given the original parties' interest in resolving their controversy promptly — not to mention the public's interest in husbanding limited judicial resources — careful attention to Rule 24(a)(2) serves important purposes. 7C Charles Alan Wright et al., *Federal Practice and Procedure* §1904 (3d ed. 2007). All these considerations applied in *San Juan*, and they apply no less here.

Simply put, the district court rejected intervention as a matter of right because this case involves a single issue and there is no actual conflict between the government and the would-be intervenors over how to approach it. In so doing, the district court treated the motion to intervene exactly as the *en banc* plurality in *San Juan* — and our subsequent decisions — said it should. *Compare Kane Cnty. v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010) (denying intervention by right where government and would-be intervenors agreed about the only issue in the case), *with WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009) (allowing intervention by right where government had admitted its multiple objectives conflicted with would-be intervenors' interests). Respectfully, I believe the district court's order merits our affirmance.